GLEN D. RUGGIERO *vs.* POLICE COMMISSIONER OF BOSTON.

Suffolk.   May 9, 1984. — June 11, 1984.

Present: GREANEY, C.J., CUTTER, & DREBEN, JJ.

*Firearms.   License.*

A license to carry a firearm under G. L. c. 140, § 131, may be restricted to
     the carrying of a firearm for a specified purpose. [257-261]
A police commissioner's action in issuing a license to carry a firearm au-
     thorizing the carrying of a firearm only for purposes of target practice,
     hunting, and sport was not arbitrary or capricious where the applicant's
     only justification for an unrestricted license was that he "does not spend
     his entire life behind locked doors" and that he "is a potential victim of
     crimes against his person." [261]

CIVIL ACTION commenced in the Boston Municipal Court
Department on May 2, 1983.

On appeal to the Superior Court Department, the case was
heard by *Forte,* J., a District Court judge sitting under statutory
authority.

*Nicholas Foundas* for the defendant.
*James S. Berg* for the plaintiff.

GREANEY, C.J. The plaintiff, a resident of Boston, applied
to the police commissioner pursuant to G. L. c. 140, § 131,
as amended by St. 1975, c. 113, § 1, for a license to carry
firearms. On November 15, 1982, the commissioner issued a
license (apparently in keeping with the purposes listed on the
plaintiff's application), which permitted the plaintiff to carry
a firearm for purposes of "Target [practice], Hunting & Sport-
ing."

In March, 1983, the plaintiff notified the police department
of his employment as a private security guard. On March 23,
1983, an agent of the commissioner amended the license to
permit the plaintiff to carry a firearm for "[p]rotection of life

and [p]roperty, conditional with his employment as a security guard."

After ending his employment as a security guard, the plaintiff was notified by the commissioner that his license would no longer authorize him to carry a firearm for self-protection and that it had again been limited to authorize his carrying of a firearm only for purposes of target practice, hunting, and sporting.

On March 31, 1983, the plaintiff applied to the commissioner for a new license to carry a firearm for self-protection. The commissioner refused to issue an unrestricted license. The plaintiff sought judicial review in the Boston Municipal Court, where, after hearing, the commissioner's decision was upheld. The plaintiff sought further review in the Superior Court,[1] there adding to his complaint requests for injunctive and declaratory relief. After hearing, a judge sitting in the Superior Court ruled that the commissioner lacked authority to issue a license which limited the plaintiff to carrying a firearm only for specified purposes. Judgment entered declaring that the plaintiff's license contained no valid restrictions and that he could carry a firearm for self-protection without violating G. L. c. 269, § 10(*a*). The commissioner appealed. We reverse.

1. The pertinent language of G. L. c. 140, § 131, reads as follows:

> "The chief of police or the board or officer having control of the police in a city or town, or the commissioner of public safety, or persons authorized by them, respectively, after an investigation, may, upon the application of any person, including a minor eighteen years of age or older[2] who has the written consent of his parent or guardian, residing or having a place of business within

---

[1] Review was sought pursuant to the provisions of G. L. c. 231, § 97. Note also the availability of review by an action in the nature of certiorari (G. L. c. 249, § 4, and c. 213, § 1A). See *Chief of Police of Shelburne* v. *Moyer*, 16 Mass. App. Ct. 543 (1983).

[2] We have no occasion to consider in this case what the Legislature may have meant by the reference to "a minor eighteen years of age or older."

their respective jurisdiction, except an alien, a person who has been convicted of a felony or of the unlawful use, possession or sale of narcotic or harmful drugs or a minor under the age of eighteen, issue a license to such applicant to carry firearms in the commonwealth or to possess and carry therein a machine gun, if it appears that he is a suitable person to be so licensed, and that he has good reason to fear injury to his person or property, or for any other proper purpose, including the carrying of firearms for use in target practice only; provided, however, that no minor shall be issued a license to possess and carry a machine gun."

The statute must be "interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Board of Educ.* v. *Assessor of Worcester,* 368 Mass. 511, 513 (1975), quoting from *Industrial Fin. Corp.* v. *State Tax Commn.,* 367 Mass. 360, 364 (1975). The statutory language itself is the principal source of insight into the legislative purpose. *Hoffman* v. *Howmedica, Inc.,* 373 Mass. 32, 37 (1977).

The goal of firearms control legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons. A wide range of methods has been adopted by the Legislature to accomplish this goal, including the requirement of licenses for the sale or possession of firearms and ammunition, and the imposition of serious penalties for infractions of the firearms control laws.[3] From a realization that prevention of harm is

---

[3] Some of the laws in the area require: (a) issuance of licenses to sell, rent, or lease firearms, including fingerprinting of the applicant and criminal penalties for unlawful issuance of a license (G. L. c. 140, § 122); (b) issuance of licenses to sell ammunition and criminal penalties for a wrongful sale (G. L. c. 140, § 122B); (c) various conditions imposed on licensees granted a license under G. L. c. 140, § 122 (G. L. c. 140, § 123); (d) for-

often preferable to meting out punishment after an unfortunate event, G. L. c. 140, § 131, was enacted as a first-line measure in the regulatory scheme. It has been said about § 131 that it was intended "to have local licensing authorities employ every conceivable means of preventing deadly weapons in the form of firearms [from] coming into the hands of evildoers." Rep. A.G., Pub. Doc. No. 12, at 233-234 (1964).

Consistent with these aims, § 131 describes those persons who, because of immaturity, antisocial behavior, or status as an alien, are deemed improper persons to obtain licenses. If the applicant is not included within one of these classes, the statute directs that a two-step inquiry be made before a license is issued. That inquiry requires that the licensing authority first ascertain whether the applicant is a "suitable person" to possess a firearm. If satisfied on that point, the licensing authority then must inquire whether the applicant can demonstrate a "proper purpose" for carrying a firearm. Without excluding other valid reasons for being licensed, the statute identifies two purposes which will furnish adequate cause to issue a license — "good reason to fear injury to person or property" and an intent to carry a firearm for use in target practice. In performing its task, the licensing authority is given considerable latitude. As was noted in *Chief of Police of Shelburne* v. *Moyer,* 16 Mass. App. Ct. 543, 546 (1983), "[t]o warrant a finding that a chief of police had no reasonable ground for refusing to issue a license it must be shown that the refusal was arbitrary, capricious or an abuse of discretion."

---

feiture or suspension of licenses issued under G. L. c. 140, § 122 (G. L. c. 140, § 125); (e) criminal penalties for licensees who violate provisions of § 123, and for persons who sell, rent, or lease firearms without a license to do so (G. L. c. 140, § 128); (f) criminal penalties for unauthorized purchase of firearms (G. L. c. 140, § 128B); (g) issuance of firearm identification cards (G. L. c. 140, § 129B); (h) issuance of permits to purchase, rent or lease firearms (G. L. c. 140, § 131A); (i) limitations on ownership or possession of firearms by aliens (G. L. c. 140, § 131H); (j) penalties for falsifying firearm licenses or identification cards (G. L. c. 140, § 131I); (k) additional criminal penalties for use of a firearm while committing a felony (G. L. c. 265, § 18A); and (l) criminal penalties for carrying a firearm or for discharging a firearm within 500 feet of a dwelling or building (G. L. c. 269, §§ 10 & 12E).

We do not think that the Legislature would have gone to the effort of providing a "proper purpose" requirement in § 131 or of identifying two such purposes unless the Legislature intended that the licensing authority have the power to limit any license granted under § 131 to a specified purpose. Were this not the situation, the language of the statute could have been concluded with the requirement that the applicant be found to be a suitable person to carry a firearm.[4] The statute does not, however, end at that juncture, and to ignore its words after the "suitable person" requirement, and before the concluding proviso, would do violence to the established principle of statutory interpretation that every word of a statute should be given meaning in furtherance of the legislation's purposes.[5] See *Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 352 Mass. 617, 618 (1967).

We conclude that the limitation imposed on the license granted the plaintiff is valid.[6] As a consequence, we have no reason

---

[4] An examination of the limitations on the power to license contained in G. L. c. 140, § 129B, which governs the issuance of a firearm identification card, reveals that the Legislature knew how to restrict licensing authorities if it chose to do so. Section 129B provides some further indication that the Legislature has not chosen to do so in § 131.

[5] The plaintiff argues that § 131 authorizes denial of a license only if the applicant fails to show either that he is a suitable person or that he is a proper person for carrying a firearm. He contends that § 131 does not allow the licensing authority, once a license is issued, to restrict its use to the specified purpose relied upon as the basis for issuing the license. The argument concludes with the notion that once a person is deemed a suitable person to have a license for one purpose, he must be considered suitable for all purposes.

We think it an illogical construction of § 131 to allow the license to issue based on a showing of one purpose, yet to allow the license to be used for various purposes not disclosed at the time the license is issued. As noted, to focus the analysis of a § 131 application solely on the suitability prong of the inquiry, effectively reads out of the statute the requirement of proof of a "proper purpose."

[6] We recognize that our construction of c. 140, § 131, may cause some difficulties in enforcement of the provisions of G. L. c. 269, § 10(*a*), by placing some burden on law enforcement personnel to determine whether an individual is lawfully carrying a firearm in accordance with restrictions stated on the license. Any such difficulties will usually present the sort of factual questions which the finder of fact in judicial proceedings must con-

to ponder the validity of limitations which might be imposed in different circumstances.[7]

2. No issue exists as to whether the commissioner acted unreasonably, see *Chief of Police of Shelburne* v. *Moyer,* 16 Mass. App. Ct. at 546, in refusing to issue the plaintiff an unrestricted license. The plaintiff was found to be a suitable person to have a license. However, from all that appears from the record, the only justification offered by the plaintiff for an unrestricted license was that he "does not spend his entire life behind locked doors [and] is a potential victim of crimes against his person." This reason, without further explanation, would not make arbitrary, capricious or an abuse of discretion the commissioner's decision to deny the plaintiff a license for self-protection.

3. The judgment is reversed. A new judgment is to enter declaring that the commissioner's decision not to grant an unrestricted license is valid.

*So ordered.*

front and resolve on a daily basis. The potential for difficulty of enforcement of c. 269, § 10(*a*), if any, does not warrant misconstruing § 131.

[7]A statement of acceptable restrictions or guidelines for licenses issued under § 131, composed by the Legislature or by its designate might be helpful to the expedient handling of future licensing applications.