Fabricant, J.
Leonard J. Wetherbee, Chief of the Concord Police Department, brings this action under G.L.c. 249, §4, seeking certiorari review of a decision of the Concord District Court reversing Wetherbee’s denial of Alec S. Costerus’s application for a license to carry firearms. Before the Court is plaintiff Wetherbee’s motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96. For reasons that will be explained, Wetherbee’s motion will be allowed.
BACKGROUND
The Concord District Court record establishes the following factual and procedural history.[1] On January 3, 2000, Alec Costerus, the defendant in this action, filed in the Concord District Court a pro se complaint seeking judicial review, pursuant to G.L.c. 140, §131(f), of a decision of Concord Police Chief Wetherbee denying his application for a license to carry firearms. Costerus’s complaint alleged that he held a firearms identification card issued by the Town of Marion on April 10, 1978, that he had held a license to carry issued by the Town of Marion on March 21, 1982, which had expired on April 26, 1986, and that he “properly applied” for a license to carry on November 24, 1999. He went on to allege that Wetherbee denied his application “for: (i) failing to comply with a Concord Police Department Administrative Policy requiring the completion of a state approved firearms safety course when upgrading from a Firearms Identification Card to a License to Carry; and (ii) his recent involvement in domestic and firearms related issues in the Town of Concord.” Costerus’s complaint further alleged that “(i) he is statutorily exempt from the firearm safety course requirement and (ii) he is a suitable person as those criteria are statutorily set forth.” His complaint proceeded to present arguments to the effect that he was exempt from the firearm safety certificate requirement of G.L.c. 140, §131P(a), because of his previous license, and that he was a suitable person because he had been acquitted of criminal charges against him arising from Em incident on March 21, 1999, in which, he alleged, Concord Police had “conducted a groundless and warrantless search” of his home.
Chief Wetherbee responded to Costerus’s complaint, also pro se, by filing an answer. Wetherbee’s answer admitted the material factual allegations of the complaint, and asserted that he had acted within his discretion in denying Costerus’s application because “due to plaintiffs recent involvement in domestic and firearms related issues, the Plaintiff is not a suitable person for carrying firearms.” Wetherbee asserted also that Costerus “has failed to provide a sufficient reason for requesting the issuance of a license to carry firearms for all lawful purposes,” and that “the Plaintiff had been taken into custody in Decatur, Illinois on October 17, 1997, for an alleged domestic battery.
On February 23, 2000, Costerus filed a motion for summary judgment in the District Court, supported by attached copies of his license application, Wetherbee’s letter of denial, and other pertinent documents. The District Court’s docket reflects that it held a hearing on the motion on February 23, 2000, and ordered the matter “remanded to Town for further hearing.” The next event reflected in the District Court’s docket is a hearing on March 6,2000, at which the Court ordered “Concord P.D. must respond by 3/15/00. Hearing continued until 3/20/00. The Judge stipulated that the weapons cannot be transported elsewhere until hearing.”
On March 15, 2000, counsel appeared for Wetherbee and filed a cross motion for summary judgment with various materials appended in support. Among these was a letter of the same date advising *160 Costerus of Wetherbee’s decision “on reconsideration,” denying Costerus’s application “for the following reasons: 1. You provided false information on the application for a License to Carry Firearms. Specifically, you answered in the negative to question number 13 despite two arrests on domestic abuse charges and you failed to disclose your arrest on a domestic abuse charge in Illinois. 2. Your recent involvement in domestic and firearms related issues in the Town of Concord and a domestic abuse arrest in Illinois indicate that you are not a suitable person to carry firearms.” On March 20, 2000, the District Court held a hearing on the cross motions for summary judgment, and issued its decision in favor of Costerus.
The documents appended to the cross motions, as filed in the District Court, provide the following factual background.[2] Costerus made his application for a “Class A License to Carry Firearms Large Capacity” by submitting to the Concord Police Department a standard form application, dated November 15, 1999. Costerus signed the application form, certifying that “I understand that any false answer(s) will be just cause for denial of. . . my license to carry firearms.” In response to a series of numbered questions, he answered “Yes” to “Have you ever been arrested?” and to “Have you ever appeared in any court as a defendant in a criminal case?” but “No” to question 13, “Are you now or have you ever been the subject of a M.G.L.c. 209A restraining order or involved in a domestic violence charge?” The form then calls for “details which must include dates, circumstances and location” of any affirmative answer, to which Costerus answered, “On 3/21/99 I was arrested in Concord for domestic A&B (nolle pros), possession of a firearm without a valid FID card (dismissed) and security violation (dismissed). On 7/2/84, I was arrested in Marion and charged with interference (dismissed).” In response to “reason(s) for requesting the issuance of a license to carry firearms” Costerus answered “ ‘Any Lawful Purpose.’ Please see attached addendum.” His addendum indicated that he sought to “lawfully purchase, possess, store, keep, or carry any lawful manner of shotgun, rifle, or handgun” as well as “reloading equipment, supplies, and ammunition,” “lawfully obtain, carry, and use firearms in training courses, practice, competitive events, hunting or instructing others in safe firearms operation, marksmanship, or other such activity,” “lawfully use a firearm in defense of my life, the life of family member or that of another should the need ever arise,” “lawfully sell any firearm that I own to another properly licensed Massachusetts resident,” and “lawfully perform any other task involving firearms and their components."[3]
Details of the Concord arrest that Costerus disclosed on his application appear in a Concord Police Incident Report. According to that report, on March 21, 1999, at approximately 4:00 p.m., Costerus stopped Officer Landers at a town parking area and asked for an escort to his residence “so he could pick up some belongings” after an argument with his wife. Costerus reported that he had left the residence “before things got out of hand,” and that he feared that if he went to the residence unescorted his wife would “get physical with him.” In response to the officer’s inquiry regarding past incidents of domestic disturbance, Costerus reported that “both of them had been arrested when they lived in Illinois for assaulting each other,” and that “he didn’t want the present situation to escalate to violence like it did in Illinois.” Upon the arrival of Sergeant Neal, Costerus elaborated on the argument, indicating that they argued in the car while driving to look at houses, and that his wife got out of the car and “proceeded to grab his glasses from his face and throw them on the ground.” He declined the officers’ suggestion to seek a restraining order, but acceded to their request to go to the police station while the officers went to speak with his wife.
At the Costerus home, Officer Landers received a different version from Costerus’s wife Denise and teenage stepdaughter. Denise Costerus reported that during the argument in the car her husband had thrown the garage door opener at her, although she “did not think this was done maliciously and the door opener did not hit her.” She reported also that during an argument earlier that day, something she said “caused him to grab her by the arm, pull her towards him, and then push her away.” She reported that he “has done this before and he says that it is her fault that he grabs her because of things she says.” She declined the officer’s suggestion to seek a restraining order “but said she would probably obtain one in the morning.”
Officer Landers then received a report that Costerus “had been arrested for domestic A + B and that he had informed them there were weapons in the house.” Upon inquiry as to the location of weapons, Denise Costerus led the officer to an unlocked cupboard in the basement, where he found “a S&W .357 magnum revolver, a Colt XK IV .45 semi-automatic, and 2 loaded magazines for the .45. Both guns were unlocked and fully loaded.” He also found “an Anschtz match 54 competition .22 long rifle which was in a locked case” as well as “a tool chest which contained multiple .22 bullets and gun cleaning equipment.” Officer Landers seized these items and transported them to the police station.
Supplements to the incident report by Sergeant Neal added certain details: Denise Costerus’s teenage daughter reported frequent arguments between the couple, but denied observing physical violence. At the police station, when asked whether he had a permit for the firearms, Costerus had reported “that he had one while he lived in Arizona, but did not know if it was active,” that “he did not have one from Massachusetts,” and that “he had worked for the Arizona Sheriffs Department and thought that he could possess the guns.” Two days later, apparently while on pretrial release, Costerus telephoned Sergeant Neal *161 from Philadelphia, reportedly on advice of his attorney, to report that “his wife had alleged that she would pursue a false claim of abuse against him in court” and that she had removed money from their bank account. Sergeant Neal then spoke with Denise Costerus, who indicated that her husband “had been threatening to have her removed from their home due to their financial status.”
The Illinois incident that Costerus mentioned to the Concord officers is also the subject of a police report. According to that report, on October 17, 1997, officers were dispatched to the Costerus's home in Decatur, Illinois, where Costerus reported that during a series of arguments beginning the previous day his wife had “hit him in the back,” and thrown a telephone and a beer bottle at him. Denise Costerus reported that her husband “grabbed her by the front of her blouse.” The officers observed no injury to either, but observed a button missing from Denise’s blouse.. Both Alec and Denise Costerus were arrested on charges of “domestic battery.” However, a letter dated March 16, 2000, from the Macon County, Illinois “Circuit Clerk,” reports that “there are no criminal charges filed in Macon County for Alex Costerus in regards to an arrest that occurred on October 17, 1997.”
Also among the materials submitted to the District Court were documents relating to Costerus’s previous Massachusetts firearms permits.[4] A form affidavit from the Firearms Record Bureau of the Criminal History Systems Board, dated May21, 1999, indicates that Costerus had, as of that date, “1 current firearms identification card . . . issued by Marion Police Department on April 10, 1978 and one expired license to carry firearms issued by the Marion Police Department on March 12, 1982, expired on April 26, 1986.” However, a letter to Costerus dated April 14, 1999, from the Marion Police Department, acknowledging receipt of a change of address notification dated April 7, 1999, indicates that “Your F.I.D. card is now revoked for failing to notify this department of your change of address within thirty days."
Based on this record, the District Court allowed Costerus’s motion for summary judgment, writing as follows on a form captioned “Findings of Fact and Conclusions of Law”:
Defendant’s motion for summary judgment is denied and summary judgment will be entered in plaintiffs favor. There is no substantial evidence in the record, considered as a whole, see G.L.c. 30A, §14(7), New Boston Garden Corp. v. Comm’r of Revenue, to support the Chiefs decision that Mr. Costerus is unsuitable. The letter from Marion proves Costerus did have an FID card on 3/99. He did disclose the Concord charges & his failure to disclose the Illinois charges was based on his belief that they were irrelevant since he was not criminally charged. While that may be a misunderstanding of the application, it was not a deliberate effort to conceal or misrepresent. The suitability decision based on the two domestic arrests is closer. However the record reflects no Illinois charges were ever brought and the Mass, charges were dismissed by the Comm, before the weapons evidence was suppressed.[5] Furthermore., in both the Concord and Illinois cases it was Mr. Costerus who brought the matter to the police’s attention himself. Att. B, p. 3 (Concord) & Att. D, p. 1. While the Chiefs discretion is certainly broad, it is not unlimited. Mr. Costerus has no convictions or ROs, has not had illegal possession of weapons and there is absolutely no indication that weapons were involved in the Concord or Illinois matters. Therefore there is no substantial evidence he is an unsuitable person and the Chiefs decision is reversed.[6]
On May 15, 2000, Wetherbee filed in the District Court a “Motion for Stay of Enforcement and of Appeal Period,” asserting his intention to move for relief from judgment based on “newly discovered evidence that demonstrates that Costerus did not disclose additional information on his Application to Carry a Firearm and is not a suitable person under M.G.L. 140, §131.” The new evidence, as set forth in the motion, was that “on June 26, 1999, Costerus was arrested at Logan International Airport and charged with Illegal Possession of a Firearm. The charge was continued without a finding by the East Boston District Court after Costerus agreed to pay $230 in court costs and victim/witness fees . . . The record of this arrest had previously been sealed and neither Chief Wetherbee nor his agents learned of this arrest until after this Court’s ruling of March 20, 2000.” Wetherbee proceeded to file his Motion for Relief from Judgment, dated May 18, 2000, asserting the same information, but referring to the Logan airport arrest as having occurred on June 26, 1995. No affidavits, police reports, or other evidentiary materials accompanied the motion. On June 19, 2000, the District Court held a hearing on these two motions, and ordered: “Deft’s motion for stay of enforcement and of appeal period allowed. Further and supplemental hearing to be held and decided prior to July 7, 2000."
A series of correspondence between the parties followed. Wetherbee, through counsel, invited Costerus “to respond to his concerns about your newly-discovered arrest.” Costerus replied that “In order to properly and cogently respond to your concerns regarding the June 26, 1995 arrest at Logan Airport, it would be helpful if you documented precisely what those concerns are that you may have." Wetherbee's counsel replied that “the Chief believes that your failure to include this arrest in response to direct questions on the license application violates the requirement of providing full and accurate answers to all questions on the application. In addition, the fact that this arrest specifically concerns a violation of Massachusetts weapons laws and occurred in an air *162 port indicates that you are not a suitable person under the statute.” Costerus responded, denying that he had been evasive, and asserting that “I thought the record had been expunged and I was surprised to learn from you that it was merely sealed. Thus, my omission was one of misunderstanding.” The materials presently before this Court reflect no further exchange between the parties, and no ruling by the District Court on Wetherbee’s motion for relief from judgment.[7]
On May 18, 2000, while the post-judgment motions were pending in the District Court, Wetherbee filed this action. After various proceedings not relevant here, Wetherbee moved for judgment on the pleadings, which Costerus has opposed. The Court heard argument on the merits on February 28, 2001.
DISCUSSION
The function of certiorari review under G.L.c. 249, §4, is to correct errors of law by tribunals not otherwise subject to review, where such errors are apparent on the record and adversely effect material rights. MacHenry v. Civil Service Com’n, 40 Mass.App.Ct. 632, 634 (1996). Relief is warranted where a plaintiff demonstrates errors that are “so substantial and material that, if allowed to stand, they will result in manifest injustice to a petitioner who is without any other available remedy.” Johnson Products, Inc. v. City Council of Medford, 353 Mass. 540, 541 n.2 (1968), quoting Tracht v. County Commrs. of Worcester, 318 Mass. 681, 686 (1945). In a certiorari case, the Court is confined to the record of the proceedings below, and is not authorized to weigh evidence, find facts, exercise discretion, or substitute its judgment for that of the decision making body. Rather, the Court is limited to determining whether the decision is legally erroneous. See Police Commissioner of Boston v. Robinson, 47 Mass.App.Ct. 767, 770 (1999); FIC Homes of Blackstone, Inc. v. Conservation Commission of Blackstone, 41 Mass.App.Ct. 681, 684-85 (1996).
Here, the decision under review is that of the District Court, which in turn reviewed the decision of Chief Wetherbee as the licensing authority for the Town of Concord under G.L.c. 140, §131(d). Thus, in this Court it is the plaintiff, Wetherbee, who must demonstrate that the Court below erred in a manner affecting substantial rights. The interests properly considered in this regard include those of the public in being protected from the potential consequences of a decision requiring the issuance of a firearms license to an unsuitable person. Wetherbee, as the official responsible for safeguarding that public interest, is a proper party to seek relief from such error. See Police Commissioner of Boston v. Robinson, 47 Mass.App.Ct. at 771.
The role of the District Court in this matter was to review Wetherbee’s decision pursuant to G.L.c. 140, §131(f). Under that provision, a justice of the District Court “after a hearing, may direct that a license be issued ... if such justice finds that there was no reasonable ground for denying . . . such license and that the petitioner is not prohibited by law from possessing same.” “That finding is warranted only upon a showing by the applicant that the licensing authority’s refusal [to grant the license] was arbitrary, capricious, or an abuse of discretion." Godfrey v. Chief of Police of Wellesley, 35 Mass.App.Ct. 42, 45-46 (1993); Ruggiero v. Police Commissioner of Boston, 18 Mass.App.Ct. 256, 259 (1984); Chief of Police of Shelburne v. Moyer, 16 Mass.App.Ct. 543, 546 (1983). The District Court may not reverse a licensing authority’s decision based on a difference of opinion as to how the licensing authority should have exercised discretion. Godfrey, 35 Mass.App.Ct. at 45.
The licensing authority's decision is governed by G.L.c. 140, §131(d). That statute has been held to grant the licensing authority broad discretion. See Godfrey v. Chief of Police of Wellesley, 35 Mass.App.Ct. at 45-46. Under the statute, the licensing authority “may” issue a license “if it appears that the applicant is a suitable person to be issued such license, and that the applicant has good reason to fear injury to his person or property, or for any other reason, including the carrying of firearms for use in sport or target practice only, subject to such restrictions expressed or authorized under this section.” The statute goes on to provide certain exceptions from its grant of licensing authority, designating certain categories of persons who are barred from license, including those who have been convicted of certain criminal offenses. The licensing authority is directed to make the determination after conducting an investigation, including review of probation, state and national criminal history, and mental health records, so as to identify those barred by statute, as well as to inform the exercise of discretion as to applicants not statutorily barred.
Having reviewed the record of the proceedings before the District Court, and having considered all arguments presented by the parties both orally and in their memoranda, this Court concludes that the District Court failed to apply the standard established by statute. The District Court’s decision thus constitutes error “so substantial and material that, if allowed to stand, [it] will result in manifest injustice to a petitioner who is without any other available remedy,” Johnson Products, Inc. v. City Council of Medford, 353 Mass. at 541 n.2, and must be reversed.
The undisputed facts as presented to the District Court[8] reveal that on two separate occasions, once in Concord and once in Illinois, Costerus was involved in physical altercations with his wife. Both times, police summoned received reports of violent conduct on both sides, leading to arrest of Costerus. Although no criminal convictions resulted, and no information indicated the use of any firearms, Wetherbee could nevertheless properly consider the volatile nature of Costerus’s marriage as bearing on his suitability for a license to carry firearms.
*163 Wetherbee could also properly consider, in evaluating Costerus’s suitability, the information available to him regarding Costerus’s conduct with respect to firearms, as derived from the March 21,1999 incident. That information included Costerus’s possession of multiple weapons and ammunition, stored unlocked in a household that included a teenager, with apparently little attention to Massachusetts licensing requirements. Although Costerus had held both a firearms identification card and a license to carry, the latter had expired some thirteen years before, and the former had been issued more than twenty years earlier, by a town Costerus apparently had long since left. Wetherbee could reasonably view this information as reflecting a failure on Costerus’s part, upon his return to Massachusetts, to demonstrate his responsibility by acting promptly to familiarize himself and to comply with all requirements applicable to his possession, storage, and carrying of firearms.
Finally, and perhaps most important, Wetherbee could properly consider, as bearing on Costerus’s suitability, his failure to provide accurate and complete responses to all questions on the application form. Costerus’s answer to question number 13, inquiring whether he had ever been “involved in a domestic violence charge” was indisputably false, at least in the sense of being inaccurate, if not in the sense of being deceptive. Similarly, Costerus’s omission of the Illinois arrest from the narrative portion of the form, seeking “details” of all affirmative answers, rendered that answer significantly incomplete. His uninformative answer to the question calling for the reasons for his application could reasonably be viewed as in the same vein. See Ruggiero v. Police Commissioner of Boston, 18 Mass.App.Ct. at 259-60 (regarding licensing authority’s power to limit purposes for which a licensee may carry firearms, based on individual circumstances disclosed in application). Whether Costerus intended to conceal, or merely misunderstood the application form, as the District Court apparently inferred, is not determinative of the reasonableness of Wetherbee’s conclusion. Costerus’s obligation, as the form unequivocally notified him, was to provide full and complete information from which the licensing authority could make its determination, not to screen his answers based on his own view of what information was relevant. His failure to do so, along with the substance of the information contained in the police reports, supports Wetherbee’s determination that Costerus is not a sufficiently responsible person to be entrusted with a license to carry firearms.[9]
Costerus’s arguments to this Court focus on two points: he contends that Wetherbee could not properly consider the information obtained by the Concord Police in connection with the March 21, 1999 incident, because the police conducted an illegal search of his home. Second, he contends that Wetherbee should not have considered the two incidents involving domestic disputes because his arrests on those occasions did not result in convictions; denial of his license application based on those incidents, he argues, constitutes punishment without conviction. Both these arguments reflect a misunderstanding of the nature and purposes of the firearms licensing statute, which is not to punish misconduct, but to prevent the harm that may arise from “access to deadly weapons by irresponsible persons.” Ruggiero v. Police Commissioner of Boston, 18 Mass.App.Ct. at 258. For this purpose, the licensing authority is permitted, indeed directed, to consider all information available from all sources regarding the underlying facts of any incidents, without limitation based on suppression of evidence in any criminal prosecution or on the outcome of any criminal proceedings. See DeLuca v. Chief of Police of Newton, 415 Mass. 155, 159-60 (1993); Chief of Police of Shelburne v. Moyer, 16 Mass.App.Ct. at 546-47.
Costerus makes two additional points: He argues that the District Court was not obligated to consider Wetherbee’s opposition to his motion for summary judgment, because Wetherbee filed his opposition late. It is apparent, however, that the District Court did consider the opposition, despite its timing, as it clearly had discretion to do. This Court is certainly not precluded from correcting an error of law affecting substantial public interests based on a late filing permitted by the District Court. Costerus finally argues that Wetherbee had the burden of offering evidence in the District Court to prove him unsuitable, and failed to meet that burden. The argument is directly contradicted by the applicable case law, which places the burden squarely on the party challenging the licensing authority’s decision. See Chief of Police of Shelburne v. Moyer, 16 Mass.App.Ct. at 546. In any event, the undisputed facts as presented to the District Court provided ample ground for Wetherbee’s determination that Costerus was not a suitable person.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs Motion for Judgment on the Pleadings is ALLOWED, the District Court’s ruling is reversed, and the licensing authority’s decision is hereby reinstated.

 Wetherbee did not name the Concord District Court as a defendant in this action, but has filed a set of papers that he represents to be a copy of that Court’s complete file, together with a certified copy of that Court’s docket. Costerus has not disputed the authenticity or completeness of the District Court record as submitted by Wetherbee.

 The form in which the District Court record was filed in this Court leaves some uncertainty as to which exhibits were appended to each side’s summary judgment motion. The papers also leave unclear whether all of the materials provided to the District Court were available to Wetherbee at the time either of his initial or his subsequent decision.

 Costerus’s “addendum” appears to track the language of c. 140, §131, including all of the purposes authorized by the statute for the possession and carrying of firearms.

 The dates of these documents indicate that Wetherbee did not have them either at the time of his initial denial of Costerus’s application or at the time of his subsequent denial on reconsideration. Whether he had the underlying Information does not appear.

 In his memorandum in this Court, Costerus asserts that in the context of the criminal case arising from the incident on March 21, 1999, the District Court suppressed evidence seized as" ‘fruit of the poisonous tree’ because the Concord Police failed to give Costerus his Miranda warning." Other than the District Court’s reference in its decision to evidence having been suppressed, the record provides neither support for nor explanation of this assertion. In particular, the record does not disclose what was suppressed, or on what ground.

 The District Court judge made a consistent but not identical endorsement on Wetherbee’s cross-motion.

 The District Court record reflects a complaint for contempt filed by Wetherbee on July 11, 2000, and an order of the Court issued on July 21, 2000, as follows: “After hearing, Motion for contempt is Denied. Deft’s opposition to Plffs request for the issuance of a civil contempt summons — finding no basis for contempt the motion is allowed. Deft’s request for fees is denied."

 The current statute leaves some doubt whether the District Court is limited to the record before the licensing authority, as is usual in judicial review of administrative decisions, or whether the District Court is authorized to hear evidence, find facts, and then determine whether the licensing authority’s decision is • reasonable on the facts found, as occurred under the previous version of the statute. See Chief of Police of Shelburne v. Moyer, 16 Mass.App.Ct. at 546-47. Here, since the District Court decided the matter on cross motions for summary judgment, the facts available for its consideration were limited to those established as undisputed. See generally, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). In this context, the substantial evidence test, referred to in the District Court’s decision, had no application.

 The information Wetherbee obtained subsequently, regarding an undisclosed arrest at Logan Airport on a firearms charge, would tend to confirm this impression. Here again, the absence of any conviction, and the sealing of the record, are hardly dispositive.