NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-363                                          Appeals Court


        JAKE NICHOLS  vs.  CHIEF OF POLICE OF NATICK & others.[1]


                          No. 18-P-363.

     Middlesex.     October 9, 2018. - January 30, 2019.

            Present:  Meade, Sullivan, & McDonough, JJ.


Firearms.  License.  Practice, Civil, Judicial review of license
     to carry firearms, Action in the nature of certiorari.


     Civil action commenced in the Superior Court Department on
October 11, 2016.

     The case was heard by Salim Rodriguez Tabit, J., on motions
for judgment on the pleadings.


     David A. DeLuca for chief of police of Natick.
     Jason A. Guida for the plaintiff.
     Eric R. Atstupenas, for Massachusetts Chiefs of Police
Association, Inc., amicus curiae, submitted a brief.
     Neil S. Tassel, for Commonwealth Second Amendment, amicus
curiae, submitted a brief.


     SULLIVAN, J.  Jake Nichols applied to the Natick police

department for a Class A (large capacity) license to carry

_____

     [1] The Justices of the Natick Division of the District Court
Department.

firearms (LTC) in October of 2015.  At the time of his application, Nichols had a fifteen-year history of prescription drug abuse, an addiction that had been facilitated in part by his position as a licensed pharmacist.  He had been in recovery for five years, was reemployed, and his pharmacy license had been reinstated, although he remained on probation with the Board of Registration in Pharmacy.  Natick police Chief James Hicks (chief) found Nichols to be an "unsuitable" person, see G. L. c. 140, § 131 (d), as appearing in St. 2014, c. 284, § 48, and denied the application for a license to carry.

On review of that decision, see G. L. c. 140, § 131 (f), as appearing in St. 2014, c. 284, § 51, a judge of the District Court held an evidentiary hearing, made factual findings, and concluded that the chief's denial of the LTC was not arbitrary, capricious, or an abuse of discretion.  On certiorari review, see G. L. c. 249, § 4; Chardin v. Police Comm'r of Boston, 465 Mass. 314, 317, cert. denied sub nom. Chardin v. Davis, 134 S. Ct. 535 (2013), a judge of the Superior Court reversed the decision of the District Court, vacated the denial of the LTC application, and remanded the matter to the chief for a new determination of eligibility.  We conclude that the Superior

Court decision exceeded the bounds of permissible certiorari review, and reverse.[2]

Background. We summarize the facts as found by the District Court judge, supplementing the findings with facts she implicitly credited and which are consistent with her opinion. Nichols, age thirty-nine at the time of his application, is in recovery from a long-standing drug addiction. He began using Ritalin and other drugs in pharmacy school at age nineteen. After graduating with a doctorate degree in pharmacy, he married, had children, and worked as a pharmacist for several pharmacies and health care providers. During this time, Nichols became addicted to Adderall, Ritalin, and Vicodin. He was able to hide his addiction from those close to him. He also denied he had a drug abuse problem, even to himself.

Although Nichols had some periods when he was able to remain drug free, he relapsed, and his drug use worsened. Nichols was terminated from several pharmacy jobs, and in 2009 began working at Oncomed, a Waltham oncology center. At Oncomed, Nichols uttered false prescriptions using the names of unsuspecting doctors, falsified prescription slips on the computer, and diverted drugs to himself. His behavior came

---

[2] We acknowledge the amicus briefs of Commonwealth Second Amendment and the Massachusetts Chiefs of Police Association, Inc.

under scrutiny in 2010, and Nichols was fired.  He voluntarily entered an inpatient drug treatment program and surrendered his pharmacy license.  The United States Drug Enforcement Administration, the State Police, and the Waltham police conducted a joint investigation of offenses involving Class B, C, and E drugs, resulting in 468 criminal charges of identity fraud, uttering false prescriptions, false health care claims, obtaining drugs by fraud, and using a false registration number, in the Framingham, Natick, and Waltham Divisions of the District Court Department.

Nichols admitted to sufficient facts to warrant a finding of guilt on eighteen charges, which were continued without a finding.  He remained on supervised probation until December, 2011, on three of the charges, and until July 25, 2014, on the remaining charges; he successfully completed probation, and the pending cases were dismissed.  The Commonwealth filed a nolle prosequi on the remaining charges.  The Board of Registration in Pharmacy suspended Nichols's license as part of a voluntary agreement in which Nichols agreed to participate in a treatment program geared to health care professionals.

Nichols participated in and completed the treatment program, and his license was conditionally reinstated subject to a four-year probationary period beginning in 2015.  He remains in counselling, and he mentors addicts and parents of addicts in

group sessions.  His application for a LTC had the support of his treating substance abuse specialist.

Nichols applied to the chief for an unrestricted Class A LTC on October 29, 2015, for the purposes of recreational shooting and ultimately becoming a firearms instructor.[3] Detective Edward Arena conducted an investigation at the chief's request and, upon its completion, met with the chief to review the results.  Detective Arena agreed with the chief's determination that Nichols was not a suitable applicant at the time; Arena was concerned about the length of Nichols's addiction, the relatively short amount of time since he had completed court-ordered probation, and Nichols's previous

---

[3] Nichols enjoyed shooting at a target range.  At the District Court hearing he acknowledged that his ability to shoot at a target range with a gun supplied by the range was not affected by the denial of the license.

A Class A license "authorizes the holder to possess and carry 'firearms, including large capacity firearms, and feeding devices and ammunition therefor, for all lawful purposes, subject to such restrictions relative to the possession, use or carrying of firearms as the licensing authority deems proper.' G. L. c. 140, § 131 (a).  In the absence of a restriction, G. L. c. 140, § 131 (a), does not prohibit the possession or carrying of a concealed firearm in public.  See Hightower v. Boston, 693 F.3d 61, 66 (1st Cir. 2012).  Contrast G. L. c. 140, § 131 (b) (precluding holder of Class B license from possessing or carrying loaded firearm 'in a concealed manner in any public way or place')."  Chardin, 465 Mass. at 316.  See St. 1998, c. 180, § 41.

relapses.[4]

By letter dated February 8, 2016, the chief denied Nichols's application on the basis of Nichols's "468 offenses . . . related to Identity Fraud, Violation of Controlled Substances, Uttering False Prescriptions, False Health Care Claims, Obtaining Drugs by Fraud and Using False Registration Number . . . documented from November 2007 until June 2010."

At the hearing in the District Court, the chief agreed that he found Nichols to be unsuitable "at this time" based "largely on [Nichols's] record and appearances in [c]ourt," and Nichols's admission to sufficient facts with respect to charges of fraud in his role as a pharmacist. Like Detective Arena, the chief also noted that Nichols's supervised probation had ended only a year before his application, that Nichols remained on probation with respect to his pharmacist's license, and that Nichols remained in treatment for his addiction. The chief also stated, "[I]n almost all cases, there's no cure, . . . it's a constant battle . . . is what I hear from some counselors on substance abuse. . . . [M]y concern is, the mix of firearms and substance

_____

[4] Detective Arena testified at the hearing that it was his "opinion [that] someone so close to the drug addiction applying for a firearms license, it's -- they're too close together in time frame and I'm -- I'm worried about a relapse or any kind [of] re-association with his past." Detective Arena also noted that Nichols did not stop using drugs until he was "confronted . . . by authorities," and that there had been lapses in Nichols's prior attempts at sobriety.

and drugs and how it relates to the possession and ownership of firearms and the risk that has for the public."

The District Court judge heard the testimony of both officials and reviewed the documentary record. She found that the chief had made a complete and thorough investigation and had denied the license because of the risks associated with addiction, the fraudulent nature of the charged offenses, the public safety risk associated with "the mix of firearms and substance abuse," "and the short period of time that has [e]lapsed from the time of the charges/addiction to today." Additionally, the judge credited Detective Arena's testimony that the decision was based on "concern about a relapse." The judge treated the chief's denial as an interim decision, not a permanent one, finding that the chief had denied the license "at this time." She also stated that Nichols's "commitment to his sobriety and to helping others learn about addiction is to be commended, and I am confident that at some point in time he will obtain a LTC."

Nichols filed an action in the nature of certiorari in the Superior Court. G. L. c. 249, § 4. On certiorari review, a judge of the Superior Court concluded that the chief's denial of the LTC was arbitrary and capricious because his testimony demonstrated a categorical opposition to approving a LTC for a recovering addict. The judge found that "in the mind of the

chief, addiction is a disqualifying status that can never be abated, regardless of rehabilitation."  The judge also concluded that the chief erred as a matter of law because there had been no showing of violent conduct, and "violence is the disqualifying individual characteristic under the suitability standard."  This appeal followed.

Standard of review.  Because the standard of review is central to our decision in this case, we summarize the statutory scheme and the reviewing court's standard of review in some detail.

"The licensing authority may deny [an] application . . . if, in a reasonable exercise of discretion, the licensing authority determines that the applicant . . . is unsuitable to be issued . . . a license to carry."  G. L. c. 140, § 131 (d).[5] "The 'suitable person' standard gives the licensing authority . . . 'considerable latitude' or broad discretion in making a licensing decision."  Chardin, 465 Mass. at 316, quoting Ruggiero v. Police Comm'r of Boston, 18 Mass. App. Ct. 256, 259 (1984).  The licensing authority must consider whether an applicant is suitable or unsuitable based on "(i) reliable and credible information that the applicant or licensee has

---

[5] The licensing authority considers an applicant's suitability only after first determining that the applicant is not a "prohibited person" under G. L. c. 140, § 131 (d).

exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety."  G. L. c. 140, § 131 (d).[6]

On review of a denial of a LTC, see G. L. c. 140, § 131 (f), a judge of the District Court, after an evidentiary hearing, may find facts and direct the licensing authority to issue a license if the judge finds that the licensing authority had "no reasonable ground" for denying the license.  Id.[7]  See Chardin, supra at 317, citing Godfrey v. Chief of Police of Wellesley, 35 Mass. App. Ct. 42, 44-45 (1993).  A conclusion that the licensing authority lacked any reasonable ground to deny the license "is warranted only upon a showing by the

---

[6] If the applicant is deemed suitable, the licensing authority will determine whether the applicant has a "proper purpose" in seeking a license to carry, see Ruggiero, 18 Mass. App. Ct. at 259; that is, "good reason to fear injury to the applicant or the applicant's property or for any other reason, including the carrying of firearms for use in sport or target practice only, subject to the restrictions expressed or authorized under this section."  G. L. c. 140, § 131 (d).

[7] "[A] District Court judge is not limited to review of an administrative record established by the . . . licensing authority."  Chief of Police of Worcester v. Holden, 470 Mass. 845, 862 (2015).  Instead, the District Court judge may consider all "relevant evidence tending to show that [the applicant] is a proper person to hold a license to carry a firearm, or that the action of the licensing authority was arbitrary or capricious, or an abuse of discretion."  Id., citing Chief of Police of Shelburne v. Moyer, 16 Mass. App. Ct. 543, 546 (1983).

applicant that the licensing authority's 'refusal [to grant . . . the license] was arbitrary, capricious, or an abuse of discretion.'" Godfrey, supra at 46, quoting Chief of Police of Shelburne v. Moyer, 16 Mass. App. Ct. 543, 546 (1983).

On certiorari review a Superior Court judge may "correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff." Chardin, 465 Mass. at 321 n.15, quoting Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 790 (2000). See G. L. c. 249, § 4. An appellate court "stand[s] in the same position as the judge below." Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729-730 (2016). "Judicial review . . . proceeds under the same standard whether conducted by [the appellate] court or . . . the Superior Court." Id. at 729.

Discussion. In Chief of Police of Worcester v. Holden, 470 Mass. 845, 849 (2015), the Supreme Judicial Court considered whether an applicant for a license to carry could be denied the license on the basis of a five year old incident of domestic abuse. The court held that the five year old incident was not stale, and that it was "within [the defendant's] grasp" to engage in evaluation and treatment that would "alleviate [the chief's] legitimate concerns" about his suitability. Id. at 864. Relying on Holden, Nichols maintains that a licensing authority must consider an applicant's rehabilitation in

determining suitability, and that past addiction may not serve as a permanent disqualifier. Nichols has characterized the chief's disqualification determination as immutable, contending that the chief "has been unyielding in his position that a recovered drug addict should never be allowed to possess a firearm."

Nichols is correct that in the absence of a conviction of the offenses charged, the statute does not mandate that he be permanently barred from receiving a LTC. See G. L. c. 140, § 131 (d) (i) (defining a "prohibited person" to include, among other things, a person who has been convicted of a violation of G. L. c. 94C). And, as Holden indicates, the licensing authority must take into consideration efforts at rehabilitation. The chief does not quarrel with either proposition of law. Rather, the chief contends that the Superior Court judge exceeded the scope of certiorari review by concluding that the chief denied Nichols's application on the basis that addiction rendered a person permanently unsuitable.

We agree that the Superior Court judge erred in making a factual finding that the chief's decision was based on a belief that "addiction is a disqualifying status that can never be abated, regardless of rehabilitation." The District Court judge had already made a factual finding that "[the chief] believes that at this time the petitioner is unsuitable because of this

risk given the fraudulent nature of the charges, the extent of the prior addiction, and the short period of time that has [e]lapsed from the time of the charges/addiction to today."[8]

The Superior Court judge's new factual finding to the contrary exceeded the scope of certiorari review in two interrelated respects. On certiorari review the Superior Court judge is limited to determining whether the District Court judge has made a "substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff" (citation and quotation omitted). Chardin, 465 Mass. at 321 n.15. This determination must be made on the basis of the facts as found by the District Court judge. Certiorari review is limited to making "a ruling of law that does not require findings of fact, determinations of credibility, or the application of administrative expertise." Frawley, 473 Mass. at 729. See Police Comm'r of Boston v. Robinson, 47 Mass. App. Ct.

---

[8] The chief's description of addiction as an ongoing struggle comports with the Nichols's own testimony at the District Court hearing, as well as his character witness's description. In contrast, Nichols now argues on appeal that he was fully rehabilitated at the time he submitted his license application and is no longer an addict. The chief's description of relapse as part of the process of recovery (as opposed to a state separate from addiction) was derived from his work with substance abuse counsellors and is consistent with the Supreme Judicial Court's recent treatment of recovery as an ongoing process. See Commonwealth v. Eldred, 480 Mass. 90, 95 (2018) ("[An] individualized approach to probation fosters an environment that enables and encourages recovery, while recognizing that relapse is part of recovery").

767, 770 (1999), quoting Johnson Prods., Inc. v. City Council of Medford, 353 Mass. 540, 541 n.2, cert. denied, 392 U.S. 296 (1968).

Although neither the chief nor the District Court judge stated that they believe a recovering addict is permanently unsuitable, neither described a preset duration of sobriety Nichols must achieve, or any explicit conditions Nichols must fulfill before he would become suitable for an LTC. Nichols contends, in essence, that by failing to set a clear time limit on his present unsuitability, the District Court judge committed a substantial error of law because the chief's decision was arbitrary, capricious, and an abuse of discretion. However, licensing authorities are not required to provide denied applicants a definitive time period in which a past act will no longer render the applicant unsuitable. See Holden, 470 Mass. at 864 ("We are not prepared to determine, on this record, what period of time must pass before the chief may no longer consider" past incidents). Rather, each applicant may be considered individually in light of the extent of the applicant's past and the nature of the applicant's recovery.

Citing Holden, 470 Mass. at 856, the Superior Court judge also relied on his view that "violence is the disqualifying individual characteristic under the suitability standard." This observation misapprehends the statute, whose mandate is to

determine whether an applicant for a LTC "may create a risk to public safety." G. L. c. 140, § 131 (d).

"The goal of firearms control legislation in Massachusetts is to limit access to deadly weapons by irresponsible persons." Ruggiero, 18 Mass. App. Ct. at 258. The statute does not limit its scope to those involved in violent crime. For example, a "prohibited person," as defined by G. L. c. 140, § 131 (d), includes any person who has been convicted of a felony, a misdemeanor punishable by more than two years of imprisonment, a violent crime, a law regulating firearms where a term of imprisonment may be imposed, a law regulating controlled substances, or a misdemeanor crime of domestic violence as defined under Federal law. G. L. c. 140, § 131 (d) (i)-(ii). The statute also severely limits (with exceptions not applicable here) access to firearms for those who have been "committed to a hospital or institution for mental illness, alcohol or substance abuse." G. L. c. 140, § 131 (d) (iii). Further, it prohibits issuing a LTC to anyone under the age of twenty-one, an "alien who does not maintain lawful permanent residency," or anyone who has received a dishonorable discharge from the United States military, among others. See G. L. c. 140, § 131 (d) (iv-x).

In sum, whether the potential risk is due to youth, illness, or certain types of past behavior, the Legislature has drafted a statute intended "to prevent the temptation and the

ability to use firearms to inflict harm, be it negligently or intentionally, on another or on oneself."  Gould v. Morgan, 907 F.3d 659, 673 (1st. Cir. 2018), quoting Commonwealth v. Lee, 10 Mass. App. Ct. 518, 523 (1980).  The danger of negligent discharge of a gun in the hands of a person under the influence of amphetamines or opiates is evident.  The District Court judge did not commit a substantial error of law when she accepted the chief's determination that "the mix of firearms and substance abuse is a public safety risk."

Conclusion.  For the reasons stated, the judgment is reversed, and a new judgment is to be entered in the Superior Court affirming the denial of Nichols's application for a license to carry.

So ordered.