NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-914                                      Appeals Court

CHIEF OF POLICE OF TAUNTON & another[1] vs. PAUL N. CARAS &
others.[2]


No. 18-P-914.

Bristol.      January 8, 2019. - April 19, 2019.

Present:  Massing, Desmond, & McDonough, JJ.


Firearms.  License.  Practice, Civil, Judicial review of license
    to carry firearms, Action in nature of certiorari.


    Civil action commenced in the Superior Court Department on
May 9, 2017.

    The case was heard by Gregg J. Pasquale, J., on motions for
judgment on the pleadings.


    Daniel F. de Abreu, Assistant City Solicitor, for the
plaintiffs.
    Paul W. Patten for Paul N. Caras.


    MASSING, J.  This appeal, which arises from the denial of

certiorari relief in the Superior Court, concerns whether the

_____

    [1] Taunton Police Captain Daniel P. McCabe.

    [2] The Justices of the Taunton Division of the District Court
Department, as nominal parties.

chief of the Taunton Police Department[3] acted reasonably in revoking Paul N. Caras's license to carry a firearm.  A District Court judge determined that revoking Caras's license based on a single incident was unreasonable.  Because the District Court judge erroneously substituted his judgment for that of the chief, we reverse the Superior Court judgment, which denied the chief's certiorari petition, and direct the entry of a new judgment enforcing the chief's revocation decision.

Background.  The District Court judge found the following facts, which we supplement with undisputed record evidence. Caras held a license to carry a firearm since about 1967.  On January 17, 2017, he was seventy-six years old and held a class A license to carry a large capacity weapon issued pursuant to G. L. c. 140, § 131.  On that day, Caras agreed to give his adult grandson a ride to Providence, Rhode Island.  Caras was carrying a Sig Saur Model 232 handgun in the unlocked glove compartment of his car.  After picking up his grandson, Caras made a brief stop, leaving the grandson alone in the car.  Caras knew that his grandson suffered from a substance use disorder.

---

[3] The chief is the "[l]icensing authority" as defined by G. L. c. 140, § 121, and Daniel P. McCabe was designated by the chief to act as agent for the purpose of firearms licensing. For convenience, we refer to the responsible police official as the "chief."

Because of heavy traffic, Caras dropped off his grandson in East Providence. Soon thereafter, he realized that his handgun was missing from the glove compartment. He immediately suspected that his grandson had stolen the gun, probably intending to pawn it to purchase drugs. Caras searched East Providence for his grandson and, when he could not locate him, reported the stolen gun to both the East Providence police and the Taunton police. Within a matter of hours police in Providence located the grandson, still in possession of the gun, and arrested him without incident.

The next day, the chief determined that Caras was no longer a suitable person to continue to hold a license to carry and revoked Caras's license. The formal notice issued to Caras by Taunton Police Captain Daniel P. McCabe explained the grounds for the determination of unsuitability as follows: "Based on Taunton Police Report 17001026, . . . I find from reliable and credible information that you have exhibited or engaged in behavior that created a risk to public safety by leaving your firearm unsecured in your vehicle and having your grandson remove it from the Commonwealth."

Seeking to reinstate his license, Caras filed a complaint for judicial review in the District Court under G. L. c. 140, § 131 (f). A nonevidentiary hearing was held on April 6, 2017. Caras supplemented the record with letters from friends and

neighbors vouching for his character and integrity. After reviewing the evidence, and relying on Caras's responsible action in reporting the theft of his gun, the judge determined that the chief's unsuitability finding was unreasonable:

> "[T]his [c]ourt cannot find, under the circumstances of this case that a single error in judgment should or must define Mr. Caras. There is no evidence that the index incident was anything more than an aberration after almost fifty (50) years of safe gun ownership. As a result, this [c]ourt cannot find that existing factors suggest that, if issued a license, Mr. Caras may create a risk to public safety."

The judge ordered the chief to reinstate Caras's license to carry.

The chief sought review of the order by filing an action for certiorari review in the Superior Court. Acting on cross motions for judgment on the pleadings, a Superior Court judge allowed Caras's motion, affirming the order of the District Court. The chief appeals.

Discussion. Under G. L. c. 140, § 131 (d), a licensing authority may decline to grant a license to carry a firearm to a person not otherwise prohibited from receiving a license[4] on the ground that the person is "unsuitable." The licensing authority

---

[4] The statute provides a list of disqualifying conditions that prohibit a person from obtaining a license to carry, such as certain criminal convictions, prior involuntary commitment for mental illness, being younger than twenty-one years of age, and renunciation of United States citizenship. See G. L. c. 140, § 131 (d) (i)-(x).

may also suspend or revoke a previously issued license "if, in a reasonable exercise of discretion, the licensing authority determines that the applicant or licensee is unsuitable . . . to continue to hold a license to carry." Id. See G. L. c. 140, § 131 (f) ("A license may be revoked or suspended by the licensing authority if it appears that the holder is no longer a suitable person to possess such license"). The statute was amended, effective January 1, 2015, to include criteria to guide the licensing authority's discretion in determining unsuitability. See Chief of Police of Worcester v. Holden, 470 Mass. 845, 855 & n.8 (2015). The criteria focus on maintaining public safety:

> "A determination of unsuitability shall be based on: (i) reliable and credible information that the applicant or licensee has exhibited or engaged in behavior that suggests that, if issued a license, the applicant or licensee may create a risk to public safety; or (ii) existing factors that suggest that, if issued a license, the applicant or licensee may create a risk to public safety."

G. L. c. 140, § 131 (d), as appearing in St. 2014, c. 284, § 48. See Phipps v. Police Comm'r of Boston, 94 Mass. App. Ct. 725, 733 (2019) (prior to amendment, "cases addressing the term [unsuitable] have generally upheld the denial or revocation of licenses where a person has a documented risk to public safety").

The holder of a license may seek judicial review of the revocation or suspension decision by filing a petition in the

District Court. See G. L. c. 140, § 131 (f). The statute permits the judge to reinstate the license if the judge finds, after a hearing, "that there was no reasonable ground for denying, suspending, revoking or restricting the license and that the petitioner is not prohibited by law from possessing a license." Id.

The District Court judge is not limited to the administrative record in determining whether the revocation decision was unreasonable. Holden, 470 Mass. at 862. The license holder, who carries the burden of proving suitability, "may present relevant evidence tending to show that he or she is a proper person to hold a license to carry a firearm, or that the action of the licensing authority was arbitrary or capricious, or an abuse of discretion." Id. The District Court judge, "after an evidentiary hearing, may find facts and direct the licensing authority to issue a license if the judge finds that the licensing authority had 'no reasonable ground' for denying the license" (citation omitted). Nichols v. Chief of Police of Natick, 94 Mass. App. Ct. 739, 743-744 (2019). The judge must bear in mind, however, that "[t]he 'suitable person' standard gives the licensing authority . . . 'considerable latitude' or broad discretion in making a licensing decision." Chardin v. Police Comm'r of Boston, 465 Mass. 314, 316, cert. denied sub nom. Chardin v. Davis, 571 U.S. 990 (2013), quoting

Ruggiero v. Police Comm'r of Boston, 18 Mass. App. Ct. 256, 259 (1984). See Nichols, supra at 743. "To warrant a finding that a chief of police had no reasonable ground for refusing to issue a license [to carry firearms,] it must be shown that the refusal was arbitrary, capricious, or an abuse of discretion." Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016), quoting Chief of Police of Shelburne v. Moyer, 16 Mass. App. Ct. 543, 546 (1983). See Firearms Records Bur. v. Simkin, 466 Mass. 168, 179 (2013) ("A District Court judge may overturn a firearms licensing decision as arbitrary or capricious where 'no reasonable ground' exists to support the decision" [citation omitted]).

On appeal from the dismissal of the chief's certiorari action, we apply the same standard of review as the Superior Court judge. See Frawley, 473 Mass. at 729-730; Nichols, 94 Mass. App. Ct. at 744; Phipps, 94 Mass. App. Ct. at 730. Our role "is to examine the record of the District Court and to 'correct substantial errors of law apparent on the record adversely affecting material rights.'" Simkin, 466 Mass. at 180, quoting Cambridge Hous. Auth. v. Civil Serv. Comm'n, 7 Mass. App. Ct. 586, 587 (1979). "[We] may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public." Chardin, 465 Mass. at 321 n.15, quoting

Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 790 (2000).  Based on our review of the record, we conclude that such an error of law has occurred.

Licensing authority decisions to revoke firearms licenses have been held to be unreasonable where the behavior of the licensee, while perhaps unusual or disturbing, did not implicate public safety concerns.  See Simkin, 466 Mass. at 182 (licensee's "arguably unusual but otherwise innocuous actions" of giving false name when seeking medical treatment did not warrant revocation of license to carry); Phipps, 94 Mass. App. Ct. at 733-735 (applicant's minor and immaterial inaccuracies in responses to questions in face-to-face meeting with commander of licensing unit did not supply reasonable grounds for denying license).  By contrast, such decisions have been held to be reasonable where the conduct in question suggested public safety risks.  See Holden, 470 Mass. at 856 (upholding denial of request to renew license to carry based on "specific and reliable information that [applicant] had assaulted and beaten his wife" five years earlier); Nichols, 94 Mass. App. Ct. at 739-740, 747 (licensing authority's denial of license to carry to applicant with fifteen-year history of prescription drug abuse not arbitrary, capricious, or abuse of discretion).

Caras's actions provided a reasonable basis for the chief's decision.  Caras failed to secure his handgun in his vehicle,

which enabled his grandson to steal it. Three police departments had to take immediate action to find and to apprehend the grandson, whose possession of the firearm not only raised its own public safety concerns, but also created a risk of the weapon falling into more dangerous hands. Although Caras was not prosecuted, his actions may have violated G. L. c. 140, § 131L, which "require[s] those authorized to possess a firearm, when they are not carrying or otherwise immediately controlling the firearm, to secure it to ensure that those who are not authorized to possess a firearm do not gain access to their firearm." Commonwealth v. McGowan, 464 Mass. 232, 241 (2013).[5] These facts do not permit the conclusion that the chief's revocation decision was arbitrary or capricious or that no reasonable ground supported it.

We agree with the District Court judge that Caras's prompt reporting of the theft to the police was laudable and may have prevented disastrous consequences that leaving the gun unattended and unsecured otherwise might have caused. And the supplemental evidence admitted during the District Court

---

[5] A conviction would have exposed Caras to a fine of up to $7,500 and imprisonment for up to eighteen months, see G. L. c. 140, § 131L (b), and would have prohibited him from holding a license to carry under G. L. c. 140, § 131 (d) (i) (D). "The fact that there was no conviction removes the incident as a license disqualifier, but it does not remove the chief's consideration of the incident on the question of [Caras's] suitability." Holden, 470 Mass. at 856.

proceedings supports the District Court judge's finding that this incident was an "aberration" in Caras's life. The chief, in his discretion, could have taken the same view of the circumstances as the District Court judge and could have chosen not to revoke Caras's license.[6] But the District Court judge's belief that the chief should have made a different decision is not a legally permissible basis for overturning the chief's unsuitability determination. The District Court judge's role is to ensure that the licensing authority's decision is based on objective evidence reasonably suggesting that the individual would pose a risk to public safety if allowed to carry a firearm, and is not otherwise arbitrary or capricious. The judge, however, may not second guess the licensing authority's decision to take one reasonable action over another. Notwithstanding Caras's laudable behavior after he discovered that his grandson had stolen his gun, the chief could reasonably determine from this incident that Caras's continued holding of a license to carry might endanger the public. None of the additional evidence before the District Court judge materially

---

[6] Caras did not present any evidence that the chief applied a different standard to Caras than to other similarly situated licensees such that the chief's decision to revoke Caras's license was arbitrary or capricious.

undermined the chief's conclusion.  The chief's decision should not have been disturbed.[7]

Conclusion.  The judgment of the Superior Court is reversed, and a new judgment shall enter affirming the revocation of Caras's license to carry.

So ordered.

---

[7] Nothing in our decision should be understood to preclude Caras from applying for reinstatement of his license to carry based on a showing to the chief that he should no longer be considered unsuitable.  See G. L. c. 140, § 131 (f) ("A revoked or suspended license may be reinstated only upon the termination of all disqualifying conditions, if any").