NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11903


 JOSEPH F. FRAWLEY, JR.  vs.  POLICE COMMISSIONER OF CAMBRIDGE.



     Middlesex.      November 5, 2015. - March 4, 2016.

     Present:  Gants, C.J., Spina, Cordy, Botsford, Lenk,
                    & Hines, JJ.



Firearms.  Police, Firearms, Retirement.  Public Employment,
     Police.  Declaratory Relief.  Practice, Civil, Summary
     judgment, Injunctive relief, Relief in the nature of
     certiorari.




     Civil action commenced in the Superior Court Department on
November 13, 2012.

     The case was heard by Douglas H. Wilkins, J., on motions
for summary judgment.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Samuel A. Aylesworth, Assistant City Solicitor, for the
defendant.
     James F. Lamond (Dennis M. Coyne with him) for the
plaintiff.


     SPINA, J.  When Joseph F. Frawley, Jr., retired on March 4,

2004, from his position as a sergeant with the Cambridge police

department (department), the police commissioner for the city of Cambridge (city) issued him a "retired officer identification card" (ID card) that had no expiration date. On December 22, 2011, Frawley applied for the issuance of a replacement ID card because the one in his possession had broken. The successor police commissioner (commissioner) denied the application, stating that Frawley "ha[d] not met the standard set by the Department." On November 28, 2012, Frawley filed an amended complaint for declaratory and injunctive relief in the Superior Court. He sought a declaration that the commissioner had breached his duty under 501 Code Mass. Regs. §§ 13.00 (2008) (regulations), which set forth the standards for identification cards for retired law enforcement officers, by refusing to issue Frawley a replacement ID card. The ID card, together with a so-called "Law Enforcement Officers Safety Act Training and Certification Card" (training certification card), allows the holder to carry a concealed firearm in accordance with the provisions of the Law Enforcement Officers Safety Act of 2004 (LEOSA), Pub. L. No. 108-277, 118 Stat. 865 (2004), codified insofar as relevant here at 18 U.S.C. § 926C (2012). See 501 Code Mass. Regs. § 13.04(2)(a). After determining that Frawley had standing to seek declaratory relief, a judge allowed Frawley's motion for summary judgment, declaring that he was entitled to receive a replacement ID card because he had retired

"in good standing."  Id. at §§ 13.02, 13.03.  The commissioner appealed, and we transferred the case to this court on our own motion.  We affirm, but for reasons different from those articulated by the judge.

1.  Statutory and regulatory framework.  On July 22, 2004, Congress enacted LEOSA, which permits a "qualified retired law enforcement officer" who possesses the requisite State-issued identification to "carry a concealed firearm that has been shipped or transported in interstate or foreign commerce," subject to certain enumerated restrictions.  18 U.S.C. § 926C.  Several years later, on January 11, 2008, the Massachusetts Executive Office of Public Safety and Security promulgated "rules and regulations governing the standards for identification cards for retired law enforcement officers to comply with the provisions of [LEOSA]."[1]  501 Code Mass. Regs. § 13.01.  Pursuant to these regulations, "[t]he chief law enforcement officer for a law enforcement agency shall issue an identification card to a qualified retired law enforcement

---

[1] The regulations promulgated in 2008 were amended on August 16, 2013.  See 501 Code Mass. Regs. §§ 13.00 (2013).  Because the application of Joseph F. Frawley, Jr., for a replacement "retired officer identification card" (ID card) was denied by the police commissioner for the city of Cambridge (commissioner) in February, 2012, our decision is based on the regulations as they existed in 2008.  See 501 Code Mass. Regs. §§ 13.00 (2008).  We note that the amendments are not relevant to the contested issues in this appeal.

officer, who retired from that law enforcement agency" (emphasis added). Id. at § 13.03. A "qualified retired law enforcement officer" is an individual who, among other things, "retired in good standing from service with a law enforcement agency as a law enforcement officer, other than for reasons of mental instability."[2,3] Id. at § 13.02. The regulations do not define what it means to have retired "in good standing."

_____

[2] In addition, a "qualified retired law enforcement officer" is an individual who (1) "before such retirement, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest"; (2) "before such retirement, was regularly employed as a law enforcement officer for an aggregate of [fifteen] years or more" or "retired from service with such agency after completing any applicable probationary period of such service due to a service-connected disability"; (3) "has a nonrefundable right to benefits under the retirement plan of the agency"; (4) "is not under the influence of alcohol or another intoxicating or hallucinatory drug or substance"; and (5) "is not prohibited by Federal law from receiving a firearm." 501 Code Mass. Regs. § 13.02. Because the commissioner has not alleged in this appeal that Frawley failed to satisfy any of these additional criteria, we do not discuss them further.

[3] When 501 Code Mass. Regs. § 13.02 was amended in 2013, see note 1, supra, the phrase "other than for reasons of mental instability" was removed. In its place, new language was added to the regulation which states that a "qualified retired law enforcement officer" is an individual who "has not been officially found by a qualified medical professional employed by the [law enforcement] agency to be unqualified for reasons relating to mental health" or "has not entered into an agreement with the [law enforcement] agency . . . in which that individual acknowledges he or she is not qualified . . . for reasons relating to mental health . . . ." 501 Code Mass. Regs. § 13.02 (2013).

The department is a "law enforcement agency" within the meaning of 501 Code Mass. Regs. § 13.02. The commissioner is its "chief law enforcement officer" under the provisions of § 2.52.010 of the Cambridge Code of Ordinances (Ordinances). See 501 Code Mass. Regs. § 13.02; Ordinances § 2.52.010 (1990). The authority of the commissioner includes the power to "organize and administer the Department," Ordinances § 2.52.030(A) (1989), and to "make suitable regulations governing the Department and the officers thereof, subject to the approval of the City Manager." Ordinances § 2.52.010. Pursuant to this authority, the commissioner issued "Policy and Procedures No. 151" (Policy 151), entitled "Police Identification Card Program," on August 6, 2011. Its stated purpose is "to describe how [the] department will go about issuing police identification cards to sworn members of the Cambridge Police Department, as well as to those members of the department who retire from the Cambridge Police Department." Policy 151 § I. The procedures pertaining to retired police officers state that "[t]he department will issue one police identification card to sworn members of the department who have separated from service from the Cambridge Police Department and qualified to receive said identification card, identifying said members as . . . retired police." Policy 151 § IV(F). A retired police officer is qualified to receive an ID card where,

among other criteria, the officer "[s]eparated in good standing, meaning that such officer was not charged with or suspected of criminal activity at the time of retirement or separation from the department, nor was he/she under investigation or facing disciplinary action for an ethical violation of departmental rules, or for any act of dishonesty."  Policy 151 § IV(F)(1)(a).

2.  <u>Factual and procedural background</u>.  The department hired Frawley on October 14, 1980.  He worked as a full-time patrol officer until April 1, 1990, when he was promoted to the rank of sergeant.  Frawley served in that position until March 4, 2004, the effective date of his retirement.  His tenure with the department was not entirely without incident.

Commencing on February 6, 2001, Frawley was suspended without pay for five days for insubordination toward a superior officer.  Subsequently, on November 19, 2003, Frawley, the city, and the Cambridge Police Superior Officers Association (union) entered into a written memorandum of agreement (agreement) in which they resolved several employment disputes.  Among other matters, Frawley agreed to accept a fifteen-day unpaid suspension in partial resolution of disciplinary charges that the city had brought against him in April, 2002.  These charges followed a department investigation which concluded that on several occasions when Frawley had reported that he was out on sick leave, he actually was conducting private business

activities and lying about his location on the days in question. As to the remaining disciplinary charges from April, 2002, which pertained to Frawley's failure to be truthful during a grievance hearing, the parties agreed to hold them open, but the city would take no further action unless Frawley was suspended for five or more days in the future, at which point the city could revive the charges. The agreement did not include any admission of culpability by Frawley, did not mention his eligibility for retirement, and did not limit Frawley's ability to exercise police powers or to possess a firearm after the service of his fifteen-day suspension. Once he served his suspension, Frawley returned to unrestricted duties as a police sergeant and continued to work in that capacity until he retired.

At around the time of Frawley's retirement, the Cambridge city council adopted a resolution "expressing its appreciation to Joseph F. Frawley, Jr., for his twenty-nine [sic] years of dedicated service to the citizens and to the City of Cambridge and wish[ing] him much happiness in his retirement." The commissioner's predecessor then issued Frawley an ID card,[4] even though the department was in the midst of investigating a citizen complaint that had been filed against Frawley on

---

[4] The record does not indicate the exact date when the commissioner's predecessor issued Frawley an ID card. According to Frawley, it was "[u]pon, or shortly after" his retirement on March 4, 2004.

September 29, 2003.  The citizen alleged that, approximately one year earlier, Frawley had abused his power and made a false arrest in connection with a purported breaking and entering in the nighttime at an apartment building.  The citizen had been employed by Frawley at some unspecified time in the past, and he believed that his arrest was related to this prior employment.  An investigation by an internal affairs division of the department ensued.  Following a review of the circumstances surrounding the incident, it was determined that the arrest was proper and not connected to any past relationship between Frawley and the citizen.  In December, 2004, the department cleared Frawley of the alleged wrongdoing.  During the portion of the investigation that occurred prior to Frawley's retirement, Frawley's law enforcement duties and responsibilities were not restricted in any manner.

On December 22, 2011, Frawley applied for the issuance of a replacement ID card because the one in his possession had broken.  He attested on his application that, among other factors, he "separated from service with the department in good standing as a police officer, meaning that [he] was not charged with or suspected of criminal activity at the time of separation, nor was [he] under investigation or facing disciplinary action for an ethical violation of departmental rules, or for any act of dishonesty."  See Policy 151

§ IV(F)(1)(a). Following a professional standards review, Frawley's application was deemed "not recommended." By letter dated February 6, 2012, the commissioner informed Frawley that the department would not be issuing him a replacement ID card because Frawley had not met "the standard set by the Department."

In his amended complaint, Frawley sought a declaration that the commissioner had breached his legal duty under 501 Code Mass. Regs. § 13.03 to issue Frawley an ID card based on his status as a "qualified retired law enforcement officer." Frawley claimed that he had been "materially disadvantaged" by the commissioner's denial of his application. In his answer to the amended complaint, the commissioner denied that Frawley had retired from the department in good standing and should be deemed a "qualified retired law enforcement officer" within the meaning of 501 Code Mass. Regs. § 13.02. The commissioner also raised several affirmative defenses, including lack of standing to bring an action for declaratory judgment.

Frawley subsequently filed a motion for summary judgment. The commissioner filed a cross motion for summary judgment, together with an affidavit explaining his rationale for denying Frawley's application for a replacement ID card. The commissioner stated in his affidavit that, at the time of Frawley's retirement, "open charges remained relating to

[Frawley's] fail[ure] to tell the truth during a [department] investigation," and Frawley was "under investigation for a claim made by a member of the public that [he] had engaged in a false arrest." The commissioner also pointed out that Frawley had been suspended for insubordination toward a superior officer, and for misconduct arising from his abuse of sick leave. Finally, the commissioner stated that after giving the matter serious consideration, he exercised his discretion as commissioner, based on his knowledge of Frawley's history with the department, and concluded that Frawley would not be issued a replacement ID card.

By decision dated September 22, 2014, the judge allowed Frawley's motion for summary judgment and declared that he was entitled to receive a replacement ID card from the commissioner in accordance with the regulations. The judge concluded that where Frawley had alleged that the commissioner violated his duty under 501 Code Mass. Regs. § 13.03, and where, as a consequence, Frawley was denied the benefits conferred under LEOSA, Frawley had standing to seek declaratory relief. The judge further concluded that Frawley had retired in good standing as a matter of "historical fact," and that the commissioner did not have the power to reconsider his predecessor's decision. The present appeal ensued.

3.  <u>Complaint for declaratory judgment</u>.  The commissioner contends that the judge erred in concluding that Frawley had standing to bring a cause of action for declaratory relief predicated on the commissioner's failure to issue him a replacement ID card in accordance with the mandate of 501 Code Mass. Regs. § 13.03.  The commissioner maintains that the regulations do not permit, either expressly or by implication, a private cause of action to compel the chief law enforcement officer for a law enforcement agency to issue an ID card. Further, he continues, the enabling statute on which the regulations are based, G. L. c. 140, § 131 (<u>r</u>), does not suggest any legislative intent to create an enforceable right.  We conclude that a complaint for declaratory judgment is not the appropriate means to challenge a chief law enforcement officer's decision to deny the issuance of an ID card.  Rather, the proper avenue for relief is a civil action in the nature of certiorari pursuant to G. L. c. 249, § 4.

It is undisputed that the regulations do not provide, in express terms, a private right of action for an aggrieved party to challenge the denial of an ID card.  Contrast, e.g., 118 Code Mass. Regs. § 14.03(5) (2005) (individual wanting to challenge decision by executive director of Disabled Persons Protection Commission regarding personal data may seek judicial review pursuant to G. L. c. 214, § 3B); 961 Code Mass. Regs. § 4.03(5)

(1993) (aggrieved party may obtain judicial review of denial of permit to conduct raffle or bazaar by filing petition for review in District Court).  The inquiry therefore becomes whether a private right of action can be inferred from the regulations. We conclude that it cannot.

In Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 546 (1998), this court held that "a private cause of action cannot be inferred solely from an agency regulation."  See Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 38 (2006) (regulations governing asbestos removal did not provide right of action to enforce compliance with mandates); Hudson v. Commissioner of Correction, 46 Mass. App. Ct. 538, 548 n.18 (1999), S.C., 431 Mass. 1 (2000) (violation of health regulations applicable to correctional facilities did not create private right of action for affected inmates).  As we explained in Loffredo, "a judicial inference of a private cause of action solely from an agency regulation requires a twofold stretch:  the judiciary infers a cause of action not to supplement a statute enacted by the Legislature, but to supplement a rule enacted by the executive, which itself supplements the statute."  Loffredo, supra at 545.  By "inferring a private cause of action from an agency regulation alone, we run the risk of joining with the executive to revise

and go substantially beyond the will of the Legislature." Id. at 546.

General Laws c. 140, § 131 (r), and 18 U.S.C. § 926C are the enabling statutes pursuant to which the Secretary of the Executive Office of Public Safety and Security promulgated the regulations governing ID cards for qualified retired law enforcement officers. See 501 Code Mass. Regs. §§ 13.00. Section 131 governs licenses to carry firearms, and subsection (r) authorizes the Secretary to promulgate regulations to carry out the purposes of § 131. Neither § 131, in general, nor subsection (r), in particular, addresses ID cards, either explicitly or implicitly. Section 131 does, however, include a private right of action for a party aggrieved by the denial of a license to carry a firearm. It states that "[a]ny applicant or holder aggrieved by a denial, revocation or suspension of a license [to carry] . . . may . . . file a petition to obtain judicial review in the district court having jurisdiction in the city or town wherein the applicant filed for, or was issued, such license." G. L. c. 140, § 131 (f). A license to carry a firearm is substantively different from an ID card. Nothing in § 131 suggests that the Legislature intended to confer a private right of action on a retired law enforcement officer who has been denied an ID card. Similarly, at least one Federal court has held that Congress did not intend, either explicitly or

implicitly, to create a private cause of action under 18 U.S.C. § 926C for retired law enforcement officers who have been denied a State-issued photographic identification. See Johnson v. New York State Dep't of Correctional Servs., 709 F. Supp. 2d 178, 183-186 (N.D.N.Y. 2010). On the basis of both State and Federal law, we conclude that Frawley cannot assert a private cause of action to compel the commissioner to issue him a replacement ID card.

Apparently recognizing the absence of a private right of action, Frawley proceeded by filing a complaint for declaratory and injunctive relief. The purpose of the declaratory judgment statute, G. L. c. 231A, is "to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations." G. L. c. 231A, § 9. Among other controversies to which the declaratory judgment procedure is appropriate, it may be used to resolve disputes concerning the interpretation of an administrative regulation. See G. L. c. 231A, § 2; Ciszewski v. Industrial Acc. Bd., 367 Mass. 135, 140 (1975). Generally speaking, however, "a party may not seek declaratory relief to effect an 'end run' around the absence of a private right of action where the Legislature intended to foreclose certain remedies." Service Employees Int'l Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 336

(2014) (SEIU).[5]  See <u>Boston Med. Ctr. Corp.</u> v. <u>Secretary of the</u>
<u>Executive Office of Health & Human Servs</u>., 463 Mass. 447, 470-
471 (2012) (provider of medical care could not seek declaratory
judgment as to reasonableness of rate determinations absent
private right of action).  Not only has the Legislature
foreclosed a private right of action with respect to the denial
of an ID card, but, more fundamentally, the nature of the
dispute here is not one that is appropriate for declaratory
judgment.[6]

---

[5] In <u>Service Employees Int'l Union, Local 509</u> v. <u>Department</u>
<u>of Mental Health</u>, 469 Mass. 323, 335-336 (2014) (<u>SEIU</u>), this
court concluded that the plaintiff had standing to seek a
declaratory judgment under G. L. c. 231A, even though the
Massachusetts privatization statute, G. L. c. 7, §§ 52-55
(Pacheco Law), did not contain a private right of action,
because the absence of declaratory relief would prevent the
Pacheco Law from being administered properly and thus would
contravene the Legislature's intent.  We noted in <u>SEIU</u> that our
determination that declaratory judgment was the appropriate
remedy "should be understood as limited to the circumstances
presented" in that case.  <u>Id</u>. at 337 n.12.  In contrast, we
continued, the proper vehicle for relief when challenging a
decision by the Auditor of the Commonwealth, who is statutorily
authorized to review all privatization contracts for compliance
with the Pacheco Law, is an action in the nature of certiorari
pursuant to G. L. c. 249, § 4.  <u>Id</u>.  As will be discussed <u>infra</u>,
a certiorari action also is the proper vehicle to challenge a
decision denying an ID card to a retired law enforcement
officer.

[6] In this appeal, Frawley has argued that he has standing to
seek declaratory relief because the commissioner violated a
legal duty owed to Frawley by refusing to issue a replacement ID
card, and because Frawley has alleged an injury -- the inability
lawfully to carry a concealed firearm across State lines
pursuant to Federal law -- that is within the area of concern of
501 Code Mass. Regs. §§ 13.00.  See <u>Enos</u> v. <u>Secretary of Envtl.</u>

"[A] complaint for declaratory relief is an appropriate way of testing the validity of regulations or the propriety of practices involving violations of rights, which are consistent and repeated in nature." Nelson v. Commissioner of Correction, 390 Mass. 379, 388 n.12 (1983), citing G. L. c. 231A, § 2. However, we have said that declaratory judgment is not "an appropriate remedy where the validity of an adjudication . . . in an individual case is being challenged. There relief in the nature of certiorari is to be sought." Diatchenko v. District Attorney for the Suffolk Dist., 471 Mass. 12, 30 (2015), quoting Averett v. Commissioner of Correction, 25 Mass. App. Ct. 280, 287 (1988), S.C., Averett, petitioner, 404 Mass. 28 (1989) (action for declaratory relief not appropriate form of judicial review of parole board decision denying initial parole to juvenile homicide offender). See SEIU, 469 Mass. at 337 n.12. See also Grady v. Commissioner of Correction, 83 Mass. App. Ct. 126, 131, 135-136 (2013) (inmate appeal challenging Department of Correction determination in official disciplinary proceeding governed by certiorari statute).

---

Affairs, 432 Mass. 132, 135 (2000). We need not analyze whether Frawley has standing to maintain his action because such analysis presupposes that Frawley's complaint for declaratory judgment is the proper vehicle for challenging the commissioner's decision. In light of our conclusion that it is not, the matter whether Frawley has standing is immaterial.

In his amended complaint, Frawley states that the parties have a genuine dispute over the commissioner's legal obligation under 501 Code Mass. Regs. § 13.03 to issue Frawley a replacement ID card.[7]  Although Frawley appears to characterize his action to fit within the scope of G. L. c. 231A, we do not agree with his description of the nature of the controversy. The meaning of § 13.03, and the right conferred thereunder, is not uncertain or ambiguous such that it requires judicial interpretation.  The duty of the commissioner is clear.  Once an individual satisfies the criteria set forth in 501 Code Mass. Regs. § 13.02 for being deemed a "qualified retired law enforcement officer," the commissioner "shall issue" an ID card. Conversely, the commissioner has no legal obligation under the regulations to issue an ID card to an individual who is not a "qualified retired law enforcement officer."  The dispute between the parties is not about the meaning or scope of the commissioner's obligation under § 13.03, but, more accurately, whether the commissioner's decision to deny Frawley's application for a replacement ID card was improper.  Given the substance of Frawley's complaint, and the absence of a private right of action under the regulations or enabling legislation,

---

[7] Although Frawley refers in his amended complaint to 501 Code Mass. Regs. § 13.04, it is § 13.03 that governs the issuance of an ID card to a qualified retired law enforcement officer.

the appropriate avenue of relief for Frawley was a civil action in the nature of certiorari pursuant to G. L. c. 249, § 4.

The purpose of a civil action in the nature of certiorari is "to relieve aggrieved parties from the injustice arising from errors of law committed in proceedings affecting their justiciable rights when no other means of relief are open." Figgs v. Boston Hous. Auth., 469 Mass. 354, 361 (2014), quoting Swan v. Justices of the Superior Court, 222 Mass. 542, 544 (1916). See G. L. c. 249, § 4. "Certiorari also has been described as 'a limited procedure reserved for correction of substantial errors of law apparent on the record created before a judicial or quasi-judicial tribunal.'" Figgs, supra, quoting School Comm. of Hudson v. Board of Educ., 448 Mass. 565, 575-576 (2007). See Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 790-791 (2000); Gloucester v. Civil Serv. Comm'n, 408 Mass. 292, 297 (1990). "To obtain certiorari review of an administrative decision, the following three elements must be present: (1) a judicial or quasi judicial proceeding, (2) from which there is no other reasonably adequate remedy, and (3) a substantial injury or injustice arising from the proceeding under review." Indeck v. Clients' Sec. Bd., 450 Mass. 379, 385 (2008). See Boston Edison Co. v. Selectmen of Concord, 355 Mass. 79, 83 (1968). We conclude that the

commissioner's decision satisfies the necessary elements for certiorari review.

As to the first element of the Indeck test, when assessing whether a proceeding is quasi judicial, "we have looked to the form of the proceeding . . . and the extent to which that proceeding resembles judicial action." Hoffer v. Board of Registration in Med., 461 Mass. 451, 457 (2012). Here, Frawley completed an application for a replacement ID card in which he attested that he satisfied the necessary criteria to be deemed a "qualified retired law enforcement officer." Then, a "professional standards review" was conducted. Based on the results of that investigation, the commissioner determined that Frawley had not met "the standard set by the Department" and, therefore, was not entitled to receive a replacement ID card. This was not a legislative or regulatory proceeding, characterized by interested persons advocating or disapproving a proposed policy to be implemented by a local licensing board. See id. See also School Comm. of Hudson, 448 Mass. at 576; Pronghorn, Inc. v. Licensing Bd. of Peabody, 13 Mass. App. Ct. 70, 72-73 (1982). Rather, notwithstanding the absence of an adjudicatory hearing, Frawley was required to attest to certain facts, the department conducted an investigation into the veracity of those facts, and the commissioner made an individualized determination concerning Frawley's entitlement to

a replacement ID card.  This proceeding, conducted under the framework of the regulations, was quasi judicial.  See, e.g., Roslindale Motor Sales, Inc. v. Police Comm'r of Boston, 405 Mass. 79, 83-84 (1989) (statute giving police commissioner authority to grant licenses to sell used motor vehicles conferred quasi judicial authority on commissioner to determine facts and decide each application).

With respect to the second element of the Indeck test, absent a civil action in the nature of certiorari, there is no other remedy available to Frawley, as we have discussed, supra. Finally, the commissioner's denial of a replacement ID card constitutes a substantial injury or injustice.  See Indeck, 450 Mass. at 385.  "The injury requirement has been interpreted as requiring (1) a justiciable injury, (2) that is particular to the plaintiff[] rather than common to the public or a segment thereof, and (3) that is more than 'hypothetical.'"  Hoffer, 461 Mass. at 457 n.8, quoting Fiske v. Selectmen of Hopkinton, 354 Mass. 269, 271 (1968).  The ID card, together with a training certification card, would allow Frawley to carry a concealed firearm across State lines in accordance with the provisions of LEOSA.  See 501 Code Mass. Regs. § 13.04(2)(a).  See also 18 U.S.C. § 926C.  By denying Frawley a replacement ID card, the commissioner has rendered him ineligible to exercise this

Federal right.  Such injury is sufficient to satisfy the third element of the Indeck test.

Our conclusion that a civil action in the nature of certiorari is the appropriate avenue of relief for Frawley is consistent with the relief that is afforded to an individual who is denied a license to carry firearms under G. L. c. 140, § 131. Judicial review of a firearms licensing decision is available first by way of "a petition to obtain judicial review in the district court," G. L. c. 140, § 131 (f), and then "by way of an action in the nature of certiorari pursuant to G. L. c. 249, § 4."  Firearms Records Bur. v. Simkin, 466 Mass. 168, 179-180 (2013).  See Chardin v. Police Comm'r of Boston, 465 Mass. 314, 317, cert. denied sub nom. Chardin v. Davis, 134 S. Ct. 525 (2013).  "On certiorari review, the Superior Court's role is to examine the record of the District Court and to 'correct substantial errors of law apparent on the record adversely affecting material rights.'"  Simkin, supra at 180, quoting Cambridge Hous. Auth. v. Civil Serv. Comm'n, 7 Mass. App. Ct. 586, 587 (1979).  Although a license to carry a firearm is substantively different from an ID card, both are components of a licensing scheme that allows a qualified retired law enforcement officer to carry a firearm in Massachusetts and across State lines.  See G. L. c. 140, § 131; 501 Code Mass. Regs. §§ 13.00.  See also 18 U.S.C. § 926C.  It is appropriate

that the denial of an ID card be subject to the same form of judicial review as the denial of a license to carry. See Bermant v. Selectmen of Belchertown, 425 Mass. 400, 404 (1997) ("a civil action in the nature of certiorari is the sole relief available to a party aggrieved by a discretionary decision of a local licensing authority").

Having ascertained the proper form of judicial review of the commissioner's decision, we now consider the separate matter of the standard of review to be applied to such decision. See Diatchenko, 471 Mass. at 31. "It is well established that 'the standard of review [under G. L. c. 249, § 4,] may vary according to the nature of the action for which review is sought.'" Figgs, 469 Mass. at 361, quoting Garrity v. Conservation Comm'n of Hingham, 462 Mass. 779, 792 (2012). We have yet to decide the appropriate standard of review of a police commissioner's decision to deny the issuance of an ID card to a retired law enforcement officer. Although the commissioner "shall issue" an ID card where an applicant has satisfied the enumerated criteria for being deemed a "qualified retired law enforcement officer," 501 Code Mass. Regs. § 13.03, whether in fact an applicant has satisfied such criteria is a discretionary decision. We recognize that the majority of the criteria are objective. See note 2, supra. Significantly, however, the commissioner must determine whether the applicant retired "in good standing." 501

Code Mass. Regs. § 13.02. Because the commissioner may use his judgment in making this determination, his decision will be construed as an exercise of administrative discretion. A reviewing court will examine whether the commissioner's decision was arbitrary and capricious such that it constituted an abuse of his discretion. See Diatchenko, supra (abuse of discretion standard appropriate to review decision whether to grant parole to particular juvenile homicide offender); Garrity, supra; Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989).

Employing an abuse of discretion standard for reviewing the denial of an ID card is consistent with the standard of review under the license to carry statute. General Laws c. 140, § 131 (f), provides that a judge "may direct that a license be issued or reinstated . . . if [the judge] finds that there was no reasonable ground for denying, suspending or revoking such license and that the petitioner is not prohibited by law from possessing same" (emphasis added). "To warrant a finding that a chief of police had no reasonable ground for refusing to issue a license [to carry firearms,] it must be shown that the refusal was arbitrary, capricious, or an abuse of discretion." Chief of Police of Shelburne v. Moyer, 16 Mass. App. Ct. 543, 546 (1983). See Simkin, 466 Mass. at 179.

When reviewing the commissioner's decision in this case, the inquiry is twofold. First, it must be determined whether the commissioner erred in reopening Frawley's case, given that the prior police commissioner had issued Frawley an ID card. Second, it must be determined whether the commissioner abused his discretion in deciding that Frawley had not met "the standard set by the Department" and, therefore, was not entitled to a replacement ID card. See 501 Code Mass. Regs. § 13.03. A decision is arbitrary or capricious such that it constitutes an abuse of discretion where it "lacks any rational explanation that reasonable persons might support." Doe v. Superintendent of Schs. of Stoughton, 437 Mass. 1, 6 (2002), quoting Fire Chief of E. Bridgewater v. Plymouth County Retirement Bd., 47 Mass. App. Ct. 66, 69 (1999). See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (abuse of discretion occurs when there has been clear error of judgment in weighing relevant factors such that decision falls outside range of reasonable alternatives). "It is not the place of a reviewing court to substitute its own opinion" for that of the commissioner. Doe, supra.

Judicial review of the commissioner's decision proceeds under the same standard whether conducted by this court or remanded to the Superior Court for reconsideration. The decision by a reviewing court is a ruling of law that does not require findings of fact, determinations of credibility, or the

application of administrative expertise.  See Doe, 437 Mass. at 5-6 & n.6; Northboro Inn, LLC v. Treatment Plant Bd. of Westborough, 58 Mass. App. Ct. 670, 673-674 (2003).  Instead, the reviewing court simply must determine whether the commissioner, on the basis of the evidence before him, abused his discretion in a manner that adversely affected Frawley's material rights.  See Simkin, 466 Mass. at 179-180; Gloucester, 408 Mass. at 297.  We stand in the same position as the judge below in making that determination.  Moreover, this court has concurrent jurisdiction with the Superior Court to entertain an action in the nature of certiorari under G. L. c. 249, § 4.  That being the case, and in light of the limited review afforded a certiorari action, we proceed to decide the commissioner's appeal in the interests of judicial economy and efficiency.[8]

---

[8] A civil action in the nature of certiorari "shall be commenced within sixty days next after the proceeding complained of."  G. L. c. 249, § 4.  Failure to do so is a "serious misstep" that is grounds for dismissal of the action.  See Bielawski v. Personnel Adm'r of the Div. of Personnel Admin., 422 Mass. 459, 465 n.13 (1996); Pidge v. Superintendent, Mass. Correctional Inst., Cedar Junction, 32 Mass. App. Ct. 14, 17-18 (1992), citing McLellan v. Commissioner of Correction, 29 Mass. App. Ct. 933, 935 (1990).  Here, the commissioner denied Frawley's application for a replacement ID card by letter dated February 6, 2012.  Frawley filed his original complaint on November 13, 2012.  If Frawley had sought review of the commissioner's decision by filing a civil action in the nature of certiorari, instead of by filing a complaint for declaratory and injunctive relief, his action would have been deemed untimely.  However, given that no appellate court heretofore had decided whether an aggrieved party could challenge the denial of an ID card, and, if so, what would be the proper avenue for

See, e.g., Murphy v. Superintendent, Mass. Correctional Inst.,
Cedar Junction, 396 Mass. 830, 833 (1986) (treating complaint
for declaratory and injunctive relief as action in nature of
certiorari); McLellan v. Commissioner of Correction, 29 Mass.
App. Ct. 933, 934 (1990) (same).

4. Entitlement to replacement ID card. We begin by
considering whether the commissioner erred in reopening
Frawley's case. Once Frawley submitted an application to obtain
a replacement ID card, the commissioner was required to issue
the card, provided that Frawley was a "qualified retired law
enforcement officer," which meant that, among other things, he
had retired "in good standing." 501 Code Mass. Regs. §§ 13.02,
13.03. The commissioner argues on appeal that it was not a
"historical fact" that Frawley had satisfied this criterion.
Therefore, the commissioner continues, he was compelled to
reopen Frawley's case to ascertain whether, in fact, Frawley had
retired in good standing. We agree.

The commissioner's predecessor issued Frawley an ID card at
around the time of Frawley's retirement on March 4, 2004. The
regulations setting forth the standards for the issuance of an
ID card were not promulgated until January 11, 2008. 501 Code

relief, we decline to dismiss Frawley's appeal as untimely. Our
decision to ignore this procedural defect should be understood
as limited to the unique circumstances presented in this case.
Cf. Bielawski, supra.

Mass. Regs. § 13.01 (2008). When the commissioner received Frawley's application for a replacement ID card in December, 2011, he would not have known what criteria, if any, his predecessor had considered prior to giving Frawley his original ID card. That being the case, the commissioner would have had no basis for knowing whether Frawley was a "qualified retired law enforcement officer" to whom the commissioner was obligated to issue a replacement ID card. Contrary to Frawley's contention, the mere fact that Frawley obtained an ID card in 2004 does not mean that he retired "in good standing," given the absence of articulated standards and criteria at that time for the issuance of an ID card.

The commissioner is vested with the authority to "organize and administer the Department." Ordinances § 2.52.030(A). This authority encompasses the issuance of an ID card to a "qualified retired law enforcement officer." To the extent that there was any question as to Frawley's classification as such, it was well within the commissioner's discretion to reexamine Frawley's status. Cf. Soe, Sex Offender Registry Bd. No. 252997 v. Sex Offender Registry Bd., 466 Mass. 381, 395 (2013), and cases cited ("An administrative agency, in the absence of statutory limitations, generally has the inherent authority to reconsider a decision or reopen a proceeding to prevent or mitigate a

miscarriage of justice").  We conclude that the commissioner did not err in reopening Frawley's case.

We now consider whether the commissioner abused his discretion in deciding that Frawley had not met "the standard set by the Department" and, therefore, was not entitled to a replacement ID card.  As we have mentioned, when the Executive Office of Public Safety and Security promulgated the regulations, it did not define what it meant to retire "in good standing."  501 Code Mass. Regs. § 13.02.  Consequently, the commissioner described the meaning of this phrase when he issued Policy 151, in accordance with his authority under Ordinances § 2.52.010.  Policy 151 § IV(F)(1)(a).  Given that Policy 151 was issued four months before Frawley applied for a replacement ID card, the commissioner could use the definition therein to assess whether Frawley should be deemed a "qualified retired law enforcement officer."  There is no evidence that the Executive Office of Public Safety and Security intended to deny the city, or the commissioner acting in conformity with the Ordinances, the right to enact policies and procedures that would be consistent with the regulations.  A municipality enjoys "considerable latitude" in legislating on matters of local concern, including the authority and duties of its police department.  Bloom v. Worcester, 363 Mass. 136, 154 (1973).  See art. 89, § 6, of the Amendments to the Massachusetts

Constitution (Home Rule Amendment). See also Ordinances c. 2.52. We have said that there must be a "sharp conflict" between a local law and a State law before the local law will be invalidated. Easthampton Sav. Bank v. Springfield, 470 Mass. 284, 288-289 (2014), quoting Bloom, supra. Here, the commissioner did not modify the regulations. He merely described the department's procedures for issuing ID cards and explained an undefined criterion. In so doing, the commissioner acted within his purview, and the description set forth in Policy 151 of what it means to retire "in good standing" governed the evaluation of Frawley's application.

In his affidavit, the commissioner cited several reasons why Frawley did not meet "the standard set by the Department." First, the commissioner stated that Frawley, at the time of his retirement, was "under investigation for a claim made by a member of the public that [he] had engaged in a false arrest." Pursuant to Policy 151, a police officer has not retired "in good standing" where, at the time of retirement, the officer was "under investigation or facing disciplinary action for an ethical violation of departmental rules, or for any act of dishonesty." Policy 151 § IV(F)(1)(a). We acknowledge that the citizen complaint would appear to disqualify Frawley from receipt of a replacement ID card. However, at the time the commissioner evaluated Frawley's application in 2012, he would

have known that the department had cleared Frawley of any purported wrongdoing with respect to the citizen complaint. The commissioner could not ignore this information where it plainly removed an impediment to Frawley being deemed an officer who retired "in good standing."[9]

Second, the commissioner stated that, at the time of Frawley's retirement, "open charges remained relating to [Frawley's] fail[ure] to tell the truth during a [department] investigation." Pursuant to the November 19, 2003, agreement, however, the city agreed to take no action on such charges unless Frawley was suspended for five or more days in the future, at which point the city could revive the charges. During the remainder of Frawley's tenure with the department, the city did not revive the charges, and, on the effective date of Frawley's retirement, the charges effectively were closed because Frawley had not engaged in any conduct that would warrant a suspension. That being the case, this matter did not disqualify Frawley from having retired "in good standing." See Policy 151 § IV(F)(1)(a).

Finally, the commissioner pointed out that Frawley had been suspended for insubordination toward a superior officer, and for

_____

[9] Had the commissioner been evaluating Frawley's application in March, 2004, he would have acted well within his discretion in refusing to issue an ID card given the ongoing investigation concerning the citizen complaint.

misconduct arising from his abuse of sick leave.  Neither of these incidents was pending "at the time of retirement."  Policy 151 § IV(F)(1)(a).  As a consequence, they could not serve as a basis for the commissioner's determination that Frawley had not retired "in good standing."

5.  Conclusion.  The commissioner abused his discretion in deciding that Frawley had not met "the standard set by the Department."  Accordingly, Frawley is entitled to receive a replacement ID card.  We vacate the declaratory judgment and remand the case to the Superior Court for entry of a judgment directing the commissioner to issue a replacement ID card to Frawley.

So ordered.