NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-39

ELIZABETH GRADY FACE FIRST, INC.

vs.

DIVISION OF OCCUPATIONAL LICENSURE & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

As alleged in its complaint, the plaintiff held a license to operate a private occupational school, issued by the division of occupational licensure pursuant to G. L. c. 112, § 263 (§ 263), that required annual renewal. To be eligible to apply for renewal, the licensing scheme first requires the licensee to obtain from the Auditor of the Commonwealth a certificate of financial eligibility to operate a private occupational school, terms that are not defined in the statute or its regulations, 230 Code Mass. Regs. §§ 12-17 (2016). See G. L. c. 112, § 263 (d), second par.; 230 Code Mass. Regs. §§ 12.01, 13.03(3).

_____

[1] Auditor of the Commonwealth.

The plaintiff alleges that for forty years it profitably operated a school of aesthetics and therapeutic massage. By 2020, shareholder equity in the school totaled $10 million and the plaintiff had net income of $700,000. Yet, in 2021, the Auditor refused to issue the plaintiff a certificate of financial eligibility for the 2020-2021 year following a dispute over the Auditor's requests for information.[2] Accordingly, the division notified the plaintiff that it would not renew the plaintiff's license, stated that a hearing was not required, and informed the plaintiff that it could appeal the division's decision pursuant to G. L. c. 30A, § 14.

It was the Auditor's decisions that the plaintiff wanted reviewed, however. At the very least, the plaintiff desired a hearing on its financial eligibility and the reasonableness of the Auditor's requests before the license it held for forty years was allowed to expire. The plaintiff therefore filed a

_____

[2] "If, after investigation, the state auditor finds [an] applicant is financially qualified to operate a private occupational school, the state auditor shall notify the division of the applicant's eligibility to apply for" license renewal. G. L. c. 112, § 263 (d), second par. "If the state auditor finds that an applicant or licensee is not financially responsible and qualified to operate a private occupational school, certification of financial eligibility shall be denied." Id. at third par. In making its investigation, "the [A]uditor is authorized to review the full records of the school" and to request a wide range of information. Id. at first par. See 230 Code Mass. Regs. § 13.03(1) (applicant must submit "such information as the State Auditor may require").

2

verified complaint against both agencies alleging due process violations and breach of contract and seeking declaratory, certiorari, or administrative relief.[3]  A judge of the Superior Court allowed a motion by the defendants to dismiss the complaint, and the plaintiff appealed.  We affirm in part, vacate in part, and remand.

Background.[4]  In 2020, the plaintiff was delayed in providing financial statements for its application for renewal due to the COVID-19 pandemic.  In January 2021 (the same year that all events discussed hereafter took place), the Auditor notified the division and the plaintiff that it would not certify the plaintiff's financial eligibility because the plaintiff had not provided financial statements for 2018 and 2019.  The plaintiff provided the statements, but the Auditor refused to withdraw its "adverse determination" and instead propounded a series of far-reaching and irrelevant requests for information it had never sought before.  The plaintiff believed

---

[3] The Auditor is an "agency" within the meaning of G. L. c. 30A, § 1 (2), because it is a department of the Commonwealth, G. L. c. 11, § 1, and "may adopt rules and regulations, issue guidelines and prescribe forms to carry out" its duties under § 263.  G. L. c. 112, § 263 (d), fifth par.

[4] We draw these facts from the verified complaint, for present purposes accepting them as true and drawing all reasonable inferences therefrom in the plaintiff's favor. Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022).

that these additional materials were sought not to "determine whether [the plaintiff] was 'financially qualified' to operate" a school but because the analyst overseeing the audit, formerly Medford's treasurer and collector, had been "frustrated" with and angered when the plaintiff sold certain real property in that city.

At the division's suggestion, the plaintiff and the Auditor entered into a conditional licensure agreement (CLA) whereby the plaintiff agreed to maintain a bond of $200,000 -- more than twice the amount of tuition -- and provide a list of items to the Auditor by February 26. The plaintiff maintained the bond and provided all the items on time. The Auditor then requested more information, which the plaintiff also provided. In doing so, the plaintiff suggested that the Auditor was confusing the calendar year with the tax year and that taxes paid by shareholders had no bearing on the plaintiff's financial ability to operate the school. The Auditor withdrew its request for shareholders' tax returns.

In April, the Auditor requested information about the plaintiff's receipt of Federal pandemic relief funds in 2020 and 2021. The plaintiff provided the information but could not say whether the funds would be treated as income or a loan because that depended on whether and when the small business administration would forgive the funds, decisions over which the

4

plaintiff had no control. Reasoning that the funds could be treated as a loan and the amount of debt the plaintiff carried was relevant to its financial condition, the Auditor notified the division that the plaintiff's 2020 and 2021 financial statements were "incomplete" because they did not contain a final description of how the Federal funds would be treated. On May 26, following a conference call with the division and the plaintiff, the Auditor agreed (1) to accept financial statements for 2020 and 2021 that contained a "subsequent event note, a forward-looking statement to the effect that were such funds forgiven they would be treated as income and otherwise as a loan," and (2) that "it [did] not anticipate requesting additional information from" the plaintiff.

Consistent with the May 26 agreement, which the complaint alleges was an enforceable contract, the plaintiff provided financial statements projecting what portions of the 2020 relief funds would be treated as income or a loan and containing a subsequent event note for the 2021 relief funds. On July 7, however, the Auditor asserted in an e-mail message that there was no subsequent event note for the 2021 funds. The message did not identify any deficiencies in accounting for the 2020 funds. On July 8, the plaintiff resubmitted the documents with a subsequent event note for the 2021 funds that tracked verbatim the Auditor's language in the July 7 message (July 8 filing).

5

The next month, without addressing the July 8 filing or providing any rationale, and contrary to its agreement of May 26, the Auditor made more requests for information about the relief funds and demanded other items the plaintiff had already provided.

In September, still without mentioning the July 8 filing, and even though it had not previously cited any deficiencies in reporting for the 2020 funds, the Auditor made another demand for information about those funds. That same month, the plaintiff's national accreditor accepted the financial statements submitted to the Auditor in the July 8 filing and the plaintiff was re-accredited. In October, the plaintiff provided the Auditor with the information it requested in September and the small business administration forgave the 2020 and 2021 relief funds. This meant that the plaintiff had even higher income in those years than had been reflected in the July 8 filing. Nevertheless, on November 15, the plaintiff received an e-mail message from the Auditor stating that the plaintiff "did not comply in fully submitting the information that was requested of the school as indicated in the Conditional Licensure Agreement. As a result, the Office of the State Auditor will not be reversing [its] adverse determination." On inquiry, the Auditor told the plaintiff that it did not comply with the CLA because it did not provide additional information

6

about the 2020 relief funds (not requested in the CLA), did not provide an estimate of spring 2022 enrollment (the plaintiff had), and did not provide a statement from a certain bank account (identified for the first time in that very message). The Auditor did not assert, and had no good faith basis to assert, that the plaintiff was financially unqualified to operate the school.

On December 22, the division notified the plaintiff that it would not renew the plaintiff's license. On December 28, the plaintiff filed suit. Though the Auditor plainly engaged in some type of internal process that culminated in decisions to request further information from the plaintiff, and though such requests and materials related to them created by the Auditor should have been retained and are not excluded from the definition of "public records," see G. L. c. 4, § 7; see also G. L. c. 112, § 263 (d), fourth par. ("financial information submitted to the state auditor shall be retained in the office of the state auditor and shall not be classified as public records" [emphasis added]), neither agency filed an administrative record as required by Superior Court Standing Order 1-96(1), (2) (2020). Instead, the parties "agree[d] that there is no administrative record to review." Concluding that the Auditor "has extraordinarily broad statutory authority to request financial information about an applicant" and that he,

7

the judge, was "ill-equipped to determine that any such request was necessary or unnecessary" because "I have no record before me," the judge dismissed all counts of the complaint. The judge went on to suggest that the plaintiff go through the application process anew; and, if the plaintiff were to do so, directed the Auditor to provide written requests for information and reasons for its decisions.

Discussion. We review the grant of a motion to dismiss de novo to determine whether the allegations of the complaint plausibly suggest an entitlement to relief. Lanier v. President & Fellows of Harvard College, 490 Mass. 37, 43 (2022). Applying this standard, we conclude that counts one, five, and six were properly dismissed, while counts two through four were not.

1. Counts properly dismissed. By count one the plaintiff sought declarations of the legality of the Auditor's and division's administrative practices and that the Auditor's requests for additional information were arbitrary, capricious, and exceeded its authority. A declaration of the legality of an agency's practices is available where the "violation has been consistently repeated." G. L. c. 231A, § 2. Here, however, the agencies are alleged to have acted in ways they never had in forty years before reaching an unfair result in the plaintiff's case. It is well settled in such circumstances that the declaratory judgment act is not the appropriate mechanism for

obtaining review.  See Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 724 (2016); Konstantopoulos v. Whately, 384 Mass. 123, 129 (1981).

Count five sought relief for the defendants' failures to hold the adjudicatory hearing or maintain the administrative record required by G. L. c. 30A, §§ 13 and 14.  But neither statute applies here, as the judge discerned.  General Laws c. 30A, § 13, which entitles a licensee to a hearing before nonrenewal of the license, does not apply "[w]here the . . . refusal to renew is based solely upon failure of the licensee to file timely reports, schedules, or applications."  The plaintiff here specifically alleges that the Auditor's "adverse determination," as well the division's denial, were based solely upon the plaintiff's claimed failure "to file timely reports, schedules, or applications."

Equally inapplicable is G. L. c. 30A, § 14, which applies to "a final decision of any agency in an adjudicatory proceeding."  Here, of course, no such proceeding is alleged to have happened and, under the licensing scheme, neither agency's decision could in any event be deemed "final."  On the contrary, the relevant provisions expressly provide that the Auditor's finding of financial eligibility "shall not be construed as the granting of a license by the division," G. L. c. 112, § 263 (d), second par., because the division conducts its own investigation

9

before making a decision that is expressly subject to G. L. c. 30A review. See G. L. c. 112, § 263 (e), second par.; 230 Code Mass. Regs. § 16.01(2). These provisions suggest that the Auditor's preliminary finding is not subject to administrative review, while the Auditor's finding of financial ineligibility only must be accompanied by a written statement of reasons. See G. L. c. 112, § 263 (d), third par. No provision provides for judicial review of that finding. Finally, we observe that in the event that the division does not grant a license "due to the applicant failing to provide complete information," that decision "shall not be considered a denial and shall not be entitled to further review." 230 Code Mass. Regs. § 16.01(2).

Count six, alleging breach of the May 26 "contract," was rightly dismissed because an enforceable contract requires valid consideration, Knott v. Racicot, 442 Mass. 314, 322 (2004), defined as doing something one was privileged not to do or giving up something one was privileged to retain. Sheraton Serv. Corp. v. Kanavos, 4 Mass. App. Ct. 851, 852 (1976). The Auditor was privileged to investigate the plaintiff's finances, and, as a condition of being eligible to apply for the permission that is required by law to operate its school, the plaintiff was required to comply. See G. L. c. 112, § 263 (c) ("All private occupational schools operating in the commonwealth shall be licensed by the division"). See also G. L. c. 30A,

§ 13 (defining "license"). The Auditor was also privileged to not issue a certificate of financial eligibility. By the May 26 agreement, the Auditor agreed to accept financial statements with subsequent event notes and that it probably would not need anything after that, but it did not agree to end its investigation or issue a certificate of financial eligibility if the plaintiff did so. As a matter of law, the Auditor's agreement to perform its existing legal duty in a particular way was not sufficient consideration to form a contract. Boston Professional Hockey Ass'n v. Commissioner of Revenue, 443 Mass. 276, 287 (2005).

2. Counts that survive. Count two sought certiorari review of the Auditor's requests for information and decision not to withdraw its "adverse determination." Certiorari requires a judicial or quasi judicial proceeding that gives rise to a substantial injury or injustice and from which there is no other adequate remedy. Frawley, 473 Mass. at 726. Here the Auditor's actions were quasi judicial because the plaintiff applied for license renewal and "was required to attest to certain facts, the [Auditor] conducted an investigation into the veracity of those facts, and the [Auditor] made an individualized determination concerning [the plaintiff's] entitlement to" a certificate of financial eligibility. Id. at 726-727. See Hoffer v. Board of Registration in Med., 461 Mass.

11

451, 457 (2012).  There is no other adequate remedy given that review is not available under § 263, the applicable regulations, or G. L. c. 30A.  Likewise, G. L. c. 112, § 64, does not provide for review as the license was not cancelled, revoked, or suspended.  And there is substantial injury because, due to the decision, the plaintiff's ability to operate its established private occupational school will expire even though it allegedly is "financially qualified" within the meaning of the statute.  Filed within sixty days of the Auditor's November 15 e-mail message, see G. L. c. 249, § 4, the complaint adequately stated a claim for certiorari review.  See Kasper v. Registrar of Motor Vehicles, 82 Mass. App. Ct. 901, 901 (2012) (action in nature of certiorari appropriate "[b]ecause there was no other avenue for appeal").  Cf. Service Employees Int'l Union, Local 509 v. Auditor of the Commonwealth, 476 Mass. 80, 84 (2016) (action in nature of certiorari appropriate means by which to challenge Auditor's determination whether privatization contract complied with Pacheco Law).

We recognize that the judge was without guidance from caselaw interpreting § 263 or its regulations.  However, rather than rely on the absence of an administrative record to require the plaintiff to go through the application process again to build one, the judge should have ordered whatever records the Auditor had in connection with its information requests and

12

decision-making process to be "brought before [the court]."

G. L. c. 249, § 4.  Although we express no opinion on the question, the judge could then have reviewed those materials to determine whether they established that the Auditor's decisions to keep requesting information and then conclude that the plaintiff had not complied with its requests, without (1) acknowledging submissions like the July 8 filing, (2) explaining its reasoning, or (3) giving the plaintiff a chance to comply in the case of the bank account identified for the first time on November 15, were "legally erroneous or so devoid of factual support as to be arbitrary and capricious."  Service Employees Int'l Union, Local 509, 476 Mass. at 85.  It may be that on such review the judge becomes satisfied that the decisions were not made for reasons "extraneous to the prescriptions of the regulatory scheme" and "related, rather, to an ad hoc agenda," Fafard v. Conservation Comm'n of Reading, 41 Mass. App. Ct. 565, 568 (1996), which is what the complaint adequately alleges.  See Ballarin, Inc. v. Licensing Board of Boston, 49 Mass. App. Ct. 506, 513 (2000) (shifting rationale for board's decision reinforced conclusion that decision was arbitrary and capricious).  And it may be that the plaintiff is not entitled to the issuance of the requested certificate, see Roslindale Motor Sales, Inc. v. Police Comm'r of Boston, 405 Mass. 79, 85 (1989).  But it cannot be that the Auditor's decisions are not

13

subject to any review. "The integrity of a licensing scheme depends upon standards that ensure fair and even-handed review of applications by the [agency], and a framework for judicial review of whether a particular decision is arbitrary and capricious, or based upon error of law." Grenier v. Selectmen of Shrewsbury, 80 Mass. App. Ct. 460, 464 (2011).

Counts three and four alleged a property interest in the license of which the plaintiff was deprived without due process of law. "As a matter of substantive due process principles under both [State and Federal] Constitutions, an occupational license constitutes a protected interest," Kewley v. Department of Elementary & Secondary Educ., 86 Mass. App. Ct. 154, 161 (2014), because if the plaintiff is financially qualified as alleged, the Auditor "shall notify the division of the applicant's eligibility to apply for" license renewal (emphasis added). G. L. c. 112, § 263 (d), second par. Compare Roslindale Motor Sales, Inc., 405 Mass. at 82-85 (no protected interest where "commissioner 'may' grant a license to a proper person"). Accordingly, a hearing on the plaintiff's financial eligibility to operate a private occupational school, along with an adequate opportunity for judicial review, was constitutionally required before the Auditor could refuse to issue the requested certificate. Arno v. Alcoholic Beverages Control Comm'n, 377 Mass. 83, 90-91 (1979). See Forsyth Sch.

14

for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 214 (1989).

Conclusion. For all these reasons, so much of the judgment as dismissed counts one, five, and six of the verified complaint is affirmed. So much of the judgment as dismissed counts two through four is vacated, and the case is remanded for further proceedings on those counts consistent with this memorandum and order.

So ordered.

By the Court (Meade, Singh & Smyth, JJ.[5]),

Assistant Clerk

Entered: May 28, 2024.

---

[5] The panelists are listed in order of seniority.